## *PRELIMINARY PRINT*

# VOLUME 602 U. S. PART 1

### PAGES 447–486

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

JUNE 14, 2024

Page Proof Pending Publication

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published.   Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D.C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# CAMPOS-CHAVES *v.* GARLAND, ATTORNEY GENERAL

## CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 22–674.   Argued January 8, 2024—Decided June 14, 2024*

To initiate the removal of an alien from the United States who is either "inadmissible" under 8 U. S. C. § 1182 or "deportable" under § 1227, the Federal Government must provide the alien with "written notice" of the proceedings.   §§ 1229(a)(1), (2).   Two types of "written notice" are described in paragraphs (1) and (2) of § 1229(a): Paragraph (1) provides that the alien be given a written "'notice to appear,'" or NTA, which must set out, among other things, "[t]he time and place at which the proceedings will be held."   Paragraph (2) states that "in the case of any change or postponement in the time and place of such proceedings," the agency must provide "a written notice" specifying "the new time or place of the proceedings" and "the consequences" of failing to attend. An alien who fails to attend a hearing despite receiving notice "shall be ordered removed in absentia" if the Government "establishes by clear, unequivocal, and convincing evidence" that "the written notice" was provided and that "the alien is removable."   § 1229a(b)(5)(A).   Three scenarios permit the rescinding of an in absentia removal order, one of which is when an alien "demonstrates that [he] did not receive notice in accordance with paragraph (1) or (2)" of § 1229(a).   § 1229a(b)(5)(C)(ii).

In these consolidated cases (one from the Fifth Circuit, and two from the Ninth), aliens Esmelis Campos-Chaves, Varinder Singh, and Raul Daniel Mendez-Colín, each moved to rescind his in absentia order of removal on the ground that he did not receive proper notice of the removal hearing.   In each case, the Government provided an initial NTA, but the NTA did not specify the time and place of the removal hearing. Eventually, the Government provided each alien with a notice of hearing under § 1229(a)(2) which set out the specific time and place of the removal hearing.   None of the aliens showed up for his hearing, and each was ordered removed in absentia by an Immigration Judge.   Each then sought to rescind the removal order, arguing that he did not re-

---

*Together with No. 22–884, *Garland* v. *Singh* and *Garland* v. *Mendez-Colín* (see this Court's Rule 12.4), on certiorari to the United States Court of Appeals for the Ninth Circuit.

ceive a proper NTA under § 1229(a)(1). The Fifth Circuit considered and denied one of the petitions, but the Ninth Circuit granted the other two.

*Held*: Because each of the aliens in this case received a proper § 1229(a)(2) notice for the hearings they missed and at which they were ordered removed, they cannot seek rescission of their in absentia removal orders on the basis of defective notice under § 1229a(b)(5)(C)(ii). Pp. 456–465.

(a) These cases turn on whether Campos-Chaves, Singh, and Mendez-Colín can "demonstrat[e]" that they "did not receive notice in accordance with paragraph (1) or (2) of section 1229(a)." § 1229a(b)(5)(C)(ii). The Government reads that provision to permit rescission only when the alien did not receive notice of the hearing he failed to attend. Campos-Chaves, Singh, and Mendez-Colín, on the other hand, urge a reading of the provision's word "or" that would distribute the phrase "did not receive notice in accordance with" across "paragraph (1) or (2)." They argue that because each can "demonstrat[e]" that he "did not receive" an NTA, they each can seek rescission of their in absentia removal orders. Pp. 456–457.

(b) The Government's provision of a single notice under either paragraph (1) or (2) defeats rescission under § 1229a(b)(5)(C)(ii). The word "'or'" is "'almost always disjunctive.'" *Encino Motorcars, LLC* v. *Navarro*, 584 U. S. 79, 87. Thus, § 1229a(b)(5)'s ordinary meaning is that either a paragraph (1) notice or a paragraph (2) notice can count as "notice in accordance with paragraph (1) or (2)." Statutory context points in the same direction. For example, nearby § 1229a(b)(5)(A) also refers to "paragraph (1) or (2)" notice. There, however, the "or" is unambiguously disjunctive, and there is no way to distribute language across the "or" that can provide an alternative meaning. Furthermore, subparagraph (A) requires the Government to establish that it provided "*the* written notice," indicating that only a single notice must be provided in a single document. *Niz-Chaves* v. *Garland*, 593 U. S. 155, 166. Pp. 457–459.

(c) In § 1229a(b)(5)(C)(ii), "notice in accordance with paragraph (1) or (2)" refers to the notice for the hearing the alien missed and at which he was ordered removed. Notice under paragraph (2) supersedes the NTA; when there is paragraph (2) notice, it is that notice which informs the alien when to appear, not the NTA. As previously noted, § 1229a(b)(5)(C)(ii)'s "notice in accordance with paragraph (1) or (2)" must correspond with § 1229a(b)(5)(A)'s "the written notice." The only way to make sense of § 1229a(b)(5)(C)(ii)'s reference to a single notice is for that notice to be the one that informed the alien of the time and date of the hearing the alien missed, and at which he was ordered removed. That reading also gives the provision a "substantive effect that is compatible

Syllabus

with the rest of the law." *United Sav. Assn. of Tex.* v. *Timbers of Inwood Forest Associates, Ltd.*, 484 U. S. 365, 371. Pp. 459–461.

(d) Campos-Chaves, Singh, and Mendez-Colín all received "notice in accordance with paragraph (1) or (2)" for the hearings they missed, and thus their in absentia removal orders may not be rescinded on that ground. The Government concedes that none of them received a compliant NTA. Each did, however, receive a "notice in accordance with paragraph . . . (2)," and each notice met all of the requirements for a notice under that provision. After receiving a defective NTA, each alien received a notice that provided a specific time and place for their removal proceedings. Those notices provided "new" times, and thereby "change[d]" the time and place of their removal proceedings, within the meaning of § 1229(a)(2). Pp. 461–465.

No. 22–674, 54 F. 4th 314, affirmed; No. 22–884, 24 F. 4th 1315, reversed (Mendez-Colín) and vacated and remanded (Singh).

ALITO, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, KAVANAUGH, and BARRETT, JJ., joined. JACKSON, J., filed a dissenting opinion, in which SOTOMAYOR, KAGAN, and GORSUCH, JJ., joined, *post*, p. 465.

*Charles L. McCloud* argued the cause for the United States in both cases. With him on the briefs were *Solicitor General Prelogar, Principal Deputy Assistant Attorney General Boynton, Deputy Solicitors General Kneedler* and *Gannon, John W. Blakeley,* and *Elizabeth K. Fitzgerald-Sambou.*

*Easha Anand* argued the cause for petitioner in No. 22–674 and respondents in No. 22–884. With her on the brief for respondent Raul Daniel Mendez-Colín in No. 22–884 were *Christopher Stender, Martin Robles-Avila, Jeffrey L. Fisher,* and *Pamela S. Karlan. Saad Ahmad* and *Martin Robles-Avila* filed a brief for respondent Varinder Singh in No. 22–884. *Raed Gonzalez, Ross Alan Miller, Alexandre Afanassiev, Nadia Anguiano, Elizabeth G. Bentley,* and *Amanda Lea Waterhouse* filed a brief for petitioner Moris Esmelis Campos-Chaves in No. 22–674.*

---

*Briefs of *amici curiae* urging reversal in No. 22–674 and affirmance in No. 22–884 were filed for Forty-Two Former Immigration Judges et al. by *Richard W. Mark*; for the National Immigrant Justice Center et al. by

Justice Alito delivered the opinion of the Court.

When the Government seeks to remove an alien, it is required to notify the alien of the time and place of the removal hearings. Title 8 U. S. C. § 1229(a) describes two types of notice—an initial notice to appear under paragraph (1), and, "in the case of any change or postponement in the time and place of" the removal proceedings, a notice of hearing under paragraph (2). When an alien fails to appear at his removal hearing despite receiving such notice, he "shall be ordered removed in absentia" if the Government can make certain showings. § 1229a(b)(5)(A). The alien can seek to have that order rescinded, however, if the alien can demonstrate that he "did not receive notice in accordance with paragraph (1) or (2) of [§ 1229(a)]."

We granted certiorari in these cases to consider what it means to "demonstrat[e] that the alien did not receive notice in accordance with paragraph (1) or (2)." § 1229a(b)(5) (C)(ii); 600 U. S. —— (2023). Each of the aliens in these cases argues that he may seek rescission because he did not receive a notice to appear that complies with paragraph (1). We hold that, to rescind an in absentia removal order on the ground that the alien "did not receive notice in accordance with paragraph (1) or (2)," the alien must show that he did not receive notice under either paragraph for the hearing at which the alien was absent and ordered removed. Because each of the aliens in these cases received a proper paragraph (2) notice for the hearings they missed and at which they were ordered removed, they cannot seek rescission of their

*Matthew E. Price*, *Michael J. DeMar*, and *Charles Roth*; and for the National Immigration Litigation Alliance et al. by *Thomas G. Sprankling*, *Kristin Macleod-Ball*, and *Trina Realmuto*.

*Christopher J. Hajec* filed a brief for the Immigration Reform Law Institute as *amicus curiae* urging affirmance in both cases.

*Michael D. Reif* and *Ellen Jalkut* filed a brief for Lucas Champollion et al. as *amici curiae* in both cases.

in absentia removal orders on the basis of defective notice under § 1229a(b)(5)(C)(ii).

## I

## A

The Immigration and Nationality Act (INA), 66 Stat. 163, as amended, 8 U. S. C. § 1101 *et seq.*, sets out "how persons are admitted to, and removed from, the United States." *Pereida* v. *Wilkinson*, 592 U. S. 224, 227 (2021). An alien is removable if he is either "inadmissible" under § 1182 or "deportable" under § 1227. 8 U. S. C. § 1229a(e)(2). When the Federal Government decides to place an alien in removal proceedings, the INA requires that the alien be provided with "written notice." §§ 1229(a)(1), (2).

That "written notice" can take one of two forms. First, under paragraph (1) of § 1229(a), the alien "shall be given" a "'notice to appear,'" or NTA. The NTA must set out, among other things, "[t]he nature of the proceedings against the alien," "[t]he legal authority under which the proceedings are conducted," "[t]he time and place at which the proceedings will be held," and the consequences of failing to appear. § 1229(a)(1). In *Niz-Chavez* v. *Garland*, 593 U. S. 155 (2021), we held that this information must be provided in a single document in order to satisfy § 1229(a)(1). *Id.*, at 160–162. Second, under paragraph (2), "in the case of any change or postponement in the time and place of such proceedings," the agency must provide "a written notice" specifying "the new time or place of the proceedings" and "the consequences" of failing to attend. § 1229(a)(2).

Aliens who receive such written notice are expected to attend their hearings. Section 1229a(b)(5)(A) provides the consequences for aliens who, "after written notice required under paragraph (1) or (2) of section 1229(a) of this title has been provided," fail to attend "a proceeding under this section." Such aliens "shall be ordered removed in absentia" if the Government "establishes by clear, unequivocal, and con-

vincing evidence that the written notice was so provided and that the alien is removable." § 1229a(b)(5)(A).

There are three scenarios in which an in absentia removal order may be rescinded. First, the alien can file a motion to reopen within 180 days of the order, and must demonstrate that the failure to appear was because of "exceptional circumstances." § 1229a(b)(5)(C)(i). Second, an alien can seek to rescind his in absentia removal order if he "demonstrates that the alien was in Federal or State custody and the failure to appear was through no fault of the alien." § 1229a(b)(5)(C)(ii). Third, there is the scenario implicated by these cases: an alien can seek rescission if he "demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2)" of § 1229(a). *Ibid.*

### B

We consolidated three cases brought by aliens who moved for rescission on the ground that they did not receive proper notice. Though the facts vary, the key details are the same in each case. The Government failed to provide a single-document NTA, but eventually provided each alien with a notice specifying the time and place of the removal hearing. When each alien failed to show up for the hearing, an Immigration Judge entered an in absentia order of removal. Each alien then sought rescission of that order under § 1229a(b)(5)(C)(ii). In all three cases, an Immigration Judge and the Board of Immigration Appeals (BIA) refused to reopen the proceedings, prompting the aliens to file a petition for review in federal court. The Fifth Circuit considered and denied one of these petitions, but the Ninth Circuit granted the other two.

### 1

Moris Esmelis Campos-Chaves is the petitioner from the Fifth Circuit. He is a native and citizen of El Salvador, and he entered the United States in 2005 without inspection near Laredo, Texas. Three days later, the Government initiated removal proceedings by serving an NTA, charging that he

was removable under §1182(a)(6)(A)(i). The NTA provided the address of the immigration court, but told Campos-Chaves to appear on "a date to be set" and at "a time to be set." App. 54. The Government followed up a few months later, sending Campos-Chaves a notice of hearing that set the hearing date to be September 20, 2005, at 9 a.m.

Campos-Chaves never appeared. The Immigration Judge noted his absence and the lack of any explanation for it. Upon finding that "clear, convincing, and unequivocal" evidence established Campos-Chaves's removability, the Immigration Judge ordered him removed in absentia. App. to Pet. for Cert. in No. 22–674, p. 16a.

Thirteen years later, Campos-Chaves filed a motion to reopen his removal proceedings on the theory that he never received a proper NTA. He relied on our decision in *Pereira* v. *Sessions*, 585 U. S. 198 (2018), in which we held that "[a] putative notice to appear that fails to designate the specific time or place" of the removal proceedings "is not a 'notice to appear under section 1229(a).'" *Id.*, at 208–209 (quoting 8 U. S. C. §1229b(d)(1)). The Immigration Judge denied Campos-Chaves's motion, and the BIA dismissed his subsequent appeal. The BIA relied on prior precedent in which it had held that an in absentia order of removal may not be rescinded merely because the NTA lacked time and place information "so long as a subsequent [notice of hearing] specifying that information was properly sent to the alien." App. to Pet. for Cert. in No. 22–674, at 8a.

Campos-Chaves filed a petition for review in the Fifth Circuit. After withdrawing and amending one opinion, the Fifth Circuit denied his petition, relying on the fact that Campos-Chaves "d[id] not dispute that he . . . received the subsequent [notice]." 54 F. 4th 314, 315 (2022).

2

Varinder Singh is one of the two respondents from the Ninth Circuit. He is a native and citizen of India who entered the United States in 2016 by climbing over a fence near

Calexico, California. Several weeks later, the Government served an NTA that charged Singh as removable under § 1182(a)(6)(A)(i) and indicated that the date and time of the hearing was "TBD." App. 11. Five days later, the Government sent a notice of hearing to Singh's given address that provided a specific time and date. About two years later, in October 2018, the immigration court sent a new notice of hearing to Singh's address, rescheduling the hearing for November 26, 2018, at 1 p.m.

When that date arrived, Singh failed to appear. Because the Government did not have his file, however, the immigration court rescheduled the hearing for December 12, 2018, at 9 a.m., again sending a notice to Singh's address. Singh failed to appear at that hearing as well. The Immigration Judge determined that Singh was removable, and accordingly entered an in absentia order of removal.

In April 2019, Singh sought to rescind his removal order. Like Campos-Chaves, Singh argued that rescission was warranted because he did not receive a proper NTA under *Pereira*. The Immigration Judge and the BIA disagreed, so Singh petitioned for review by the Ninth Circuit.

The Ninth Circuit granted his petition. 24 F. 4th 1315, 1317 (2022). The panel held that the lack of a single-document NTA alone rendered Singh's in absentia removal order rescindable. *Id.*, at 1319–1320. The Government's petition for rehearing en banc was denied. 51 F. 4th 371 (2022). Judge Collins, joined by 11 other judges, dissented. *Id.*, at 371–382.

3

Raul Daniel Mendez-Colín, a native and citizen of Mexico, is the other respondent from the Ninth Circuit. He attempted to enter the United States in 2001 at San Luis, Arizona, with two other aliens, falsely claiming that he was a United States citizen. The next day, he was served an NTA, which charged him with removability under § 1182(a)(6)(E)(i). The NTA included the immigration court's ad-

dress, but provided only that the date and time were "[t]o be set." App. 46.

Soon thereafter, the immigration court mailed Mendez-Colín a notice of hearing, with a specific date and time for a hearing later that year. Mendez-Colín appeared at that hearing. The immigration court ultimately scheduled multiple additional hearings to take place in 2002. For each, the Immigration Judge provided a notice of hearing to either Mendez-Colín or his attorney, who attended all of the 2002 hearings.

The Immigration Judge sustained the charge of removability at the last of those hearings. Mendez-Colín expressed his desire to apply for cancellation of removal, prompting the immigration court to mail a notice to his attorney for an individual hearing on September 15, 2003, at 9 a.m.

Days before the September 15 hearing, Mendez-Colín's attorney filed a motion to withdraw as counsel because of his client's "fail[ure] to maintain contact." Record in No. 20–71846 (CA9), ECF Doc. 9–2, p. 77. Nonetheless, the attorney attended the September 15 hearing, where the Immigration Judge granted the motion to withdraw but retained the attorney for "the limited purpose of serv[ing any] in absentia order." *Id.*, at 155. The Immigration Judge determined that Mendez-Colín "abandoned any and all claim(s) for relief from removal" and ordered him removed in absentia. *Id.*, at 156.

Mendez-Colín filed two motions to reopen his removal proceedings in December 2003 and February 2004, respectively. The Immigration Judge denied both. Mendez-Colín appealed the denial of his second motion to reopen, but the BIA considered the appeal withdrawn when he was removed from the United States during its pendency.

About 15 years later, Mendez-Colín moved to reinstate his appeal, now claiming that his in absentia order of removal was rescindable because of his defective NTA. The BIA denied the motion, prompting Mendez-Colín to file a petition

for review, which was heard by the same Ninth Circuit panel that heard *Singh*. 2022 WL 342959 (2022). The panel granted the petition in an unpublished opinion, *ibid.*, and the full court denied the Government's en banc petition alongside the en banc petition in *Singh*. 50 F. 4th 942, 946 (2022).

## II

We granted certiorari in all three cases to decide whether an alien can seek rescission of an in absentia removal order indefinitely whenever the Government fails to provide a single-document NTA. The Government concedes that, in all three cases, the NTAs lacked a specific time and date and thus failed to comply with § 1229(a)(1). And before this Court, each alien argues that he is eligible for rescission under § 1229a(b)(5)(C)(ii). Thus, this litigation turns on whether Campos-Chaves, Singh, and Mendez-Colín can "demonstrat[e]" that they "did not receive notice in accordance with paragraph (1) or (2) of section 1229(a)." § 1229a(b)(5)(C)(ii).

The Government reads § 1229a(b)(5)(C)(ii) to permit rescission only when the alien did not receive notice of the hearing he failed to attend. In each of these cases, the alien was ordered removed in absentia at a hearing for which he received notice. The Government argues that those notices of hearing complied with paragraph (2), and that each alien thereby "receive[d] notice in accordance with paragraph (1) or (2) of section 1229(a)." *Ibid.* That, continues the Government, means the aliens are ineligible for rescission of their in absentia removal orders.

Campos-Chaves, Singh, and Mendez-Colín read the statute differently and urge a distributive reading of the "or" in § 1229a(b)(5)(C)(ii). That is, they distribute the phrase "did not receive notice in accordance with" across "paragraph (1) or (2)," such that an alien can have his in absentia removal order rescinded if he "demonstrates" that he "did not receive notice in accordance with" paragraph (1) or that he "did

not receive notice in accordance with" paragraph (2). Because each alien can "demonstrat[e]" that he "did not receive" an NTA, they argue that they each can seek rescission of their in absentia removal orders. Brief for Respondent Singh 47.

We agree with the Government. An alien can have his in absentia removal order rescinded under § 1229a(b)(5)(C)(ii) only if he can demonstrate that he "did not receive" a paragraph (1) notice *or* a paragraph (2) notice—whichever corresponds to the hearing at which he was ordered removed in absentia. Each alien before us received paragraph (2) notices for the hearings they missed. They are therefore ineligible for rescission of their in absentia removal orders.

## A

As always, we start with the text. *Bartenwerfer* v. *Buckley*, 598 U. S. 69, 74 (2023). And here, the text provides that to be eligible for rescission of his in absentia removal order an alien must "demonstrat[e] that the alien did not receive notice in accordance with paragraph (1) or (2) of section 1229(a)." § 1229a(b)(5)(C)(ii). The word "'or'" is "'almost always disjunctive,'" *Encino Motorcars, LLC* v. *Navarro*, 584 U. S. 79, 87 (2018) (quoting *United States* v. *Woods*, 571 U. S. 31, 45 (2013)), and is generally used "to indicate . . . an alternative," Webster's Third New International Dictionary 1585 (1993); see also *Woods*, 571 U. S., at 45–46. So here, § 1229a(b)(5)'s ordinary meaning is that either a paragraph (1) notice or a paragraph (2) notice can count as "notice in accordance with paragraph (1) or (2)."

Of course, "statutory context can overcome the ordinary, disjunctive meaning of 'or.'" *Encino Motorcars*, 584 U. S., at 87; see also *Pulsifer* v. *United States*, 601 U. S. 124, 151 (2024) ("[C]onjunctions are versatile words, which can work differently depending on context"). But statutory context points in the same direction as the usual meaning here. Consider § 1229a(b)(5)(A), just two subparagraphs earlier,

which sets out the preconditions for an alien to be removed
in absentia in the first place.   That subparagraph provides:

> "Any alien who, after written notice required under
> paragraph (1) or (2) of [§ 1229(a)] has been provided
> to the alien or the alien's counsel of record, does not
> attend a proceeding under this section, shall be or-
> dered removed in absentia if the Service establishes by
> clear, unequivocal, and convincing evidence that the
> written notice was so provided and that the alien is
> removable."

Just as in subparagraph (C), subparagraph (A) refers to
"paragraph (1) or (2)" notice.   In subparagraph (A), how-
ever, the "or" is unambiguously disjunctive; there is no way
to distribute language across the "or" that can provide an
alternative meaning of the statute.   On any reading, subpar-
agraph (A) does not require *both* paragraphs (1) and (2) no-
tice before an alien can be removed in absentia.   It requires
only one.

Furthermore, subparagraph (A) requires the Government
to establish that it provided "*the* written notice."   § 1229a(b)
(5)(A) (emphasis added); see also *ibid.* ("*The* written notice
by the Attorney General shall be considered sufficient for
purposes of this subparagraph if provided at the most recent
address provided under section 1229(a)(1)(F)" (emphasis
added)).   In *Niz-Chavez*, we concluded that the phrase "'the
notice described in paragraph (1) or (2) of section 1229(a)'"
indicated that the notice must be provided in one document.
593 U. S., at 166 (quoting § 1229a(b)(7)); see also *id.*, at 165
("[A]n article coupled with a singular noun . . . suggest[s] a
discrete document").   If "the notice" denotes a single docu-
ment, it certainly must denote a single notice.   And as long
as the Government can show—under the given burden of
proof—that the alien is removable and was provided "*the*
written notice," the alien "shall be ordered removed in ab-
sentia."   § 1229a(b)(5)(A) (emphasis added).   Subparagraph

(A) clearly contemplates in absentia removal of aliens who received only one notice under paragraph (1) or (2).

Indeed, concluding otherwise would create a mismatch in the statutory scheme. Under the aliens' theory, it is more difficult for the Government to defend an in absentia removal order than it is to obtain one in the first place. An alien can be removed in absentia on the basis of receiving *one* notice, but the aliens would read §1229a(b)(5)(C)(ii) to permit rescission of that order for failure to receive *both* types of notices. Brief for Respondent Singh 22. We doubt that Congress intended such an incongruity. See *Dacostagomez-Aguilar* v. *United States Atty. Gen.*, 40 F. 4th 1312, 1317 (CA11 2022) ("It would be nonsensical to invalidate an in absentia removal order because two kinds of notice were not received when only one was required in the first place").

B

Our conclusion that a single notice defeats rescission under §1229a(b)(5)(C)(ii) does not end the analysis, however. We still must determine *which* notice the alien must show was lacking in order to have his in absentia removal order rescinded. We hold that, in §1229a(b)(5)(C)(ii), "notice in accordance with paragraph (1) or (2)" refers to the notice for the hearing the alien missed, and at which he was ordered removed.

Section 1229a(b)(5)(C)(ii) cross-references paragraphs (1) and (2) of §1229(a). Paragraph (1) notice—the NTA—is the initial document notifying the alien of "removal proceedings under" §1229a. Paragraph (2) notice issues "in the case of any change or postponement in the time and place of such proceedings" and provides the "new time or place of the proceedings." Thus, notice under paragraph (2) supersedes the NTA; when there is paragraph (2) notice, it is that notice which informs the alien when to appear, not the NTA.

Now turn back to §1229a. As noted before, for the statutory scheme to make sense, "notice in accordance with para-

graph (1) or (2)" in § 1229a(b)(5)(C)(ii) must correspond with "the written notice" mentioned in § 1229a(b)(5)(A). And § 1229a(b)(5)(A) contemplates a very specific process. An alien "shall be ordered removed in absentia" when he "does not attend *a* proceeding under this section" and the Government establishes, among other things, that "the written notice was so provided." (Emphasis added.) Thus, "the written notice" is tied to the singular proceeding missed, and at which the alien was "removed in absentia." Whether that notice was issued under paragraph (1) as an NTA or under paragraph (2), it is that notice which the Government must prove was provided to remove an alien in absentia. And it is that notice which the alien must prove was *not* provided in order to have his in absentia removal order rescinded.

This reading aligns with common sense. See *Koons Buick Pontiac GMC, Inc.* v. *Nigh,* 543 U. S. 50, 63 (2004) ("'[T]here is no canon against using common sense in construing laws as saying what they obviously mean'" (quoting *Roschen* v. *Ward,* 279 U. S. 337, 339 (1929)). The Government does not argue that either a paragraph (1) *or* a paragraph (2) notice is always sufficient regardless of which corresponds to the hearing the alien missed. A simple hypothetical demonstrates why. Suppose the Government sent a fully compliant NTA to the alien, specifying the time, date, and place of the hearing. Suppose then that the Government changed the hearing date without sending any notice whatsoever to the alien, and that the alien was ordered removed in absentia at that hearing. Literally, the alien received "notice in accordance with paragraph (1) or (2)." § 1229a(b)(5)(C)(ii). But no one would say the alien is thereby ineligible to seek rescission of a removal order entered at a hearing for which he never received notice.

The only way to make sense of § 1229a(b)(5)(C)(ii)'s reference to a single notice is for that notice to be the one that matters: the one that informed the alien of the time and date of the hearing the alien missed, and at which he was ordered

removed. That reading also gives the provision a "substantive effect that is compatible with the rest of the law." *United Sav. Assn. of Tex.* v. *Timbers of Inwood Forest Associates, Ltd.*, 484 U. S. 365, 371 (1988). Recall the other two scenarios in which an in absentia removal order may be rescinded. In those, the alien must either demonstrate that "the failure to appear was because of exceptional circumstances," § 1229a(b)(5)(C)(i), or that he "was in Federal or State custody and the failure to appear was through no fault of the alien," § 1229a(b)(5)(C)(ii). For either, relief is conditioned upon the alien's showing he was not at fault for failing to appear. See § 1229a(e)(1) (defining "exceptional circumstances" to be "beyond the control of the alien"). We think Congress had the same idea in the third scenario. The alien's failure to appear is excused by his failure to receive a paragraph (1) or (2) notice only if that notice would have informed the alien of the relevant hearing.

C

Finally, we must decide whether Campos-Chaves, Singh, and Mendez-Colín received "notice in accordance with paragraph (1) or (2)" for the hearings they missed. We hold that they did, and that their in absentia removal orders thus may not be rescinded on that ground.

The Government concedes—as it must under *Pereira* and *Niz-Chavez*—that none of the aliens received an NTA compliant with § 1229(a)(1). Each alien's NTA provided only that the time of the hearing was "TBD" or "to be set," which is the sort of language we found to be inadequate in *Pereira*. See 585 U. S., at 206 (NTA which ordered alien to appear "'on a date to be set at a time to be set'" was insufficient to satisfy § 1229(a)(1)). This litigation thus turns on whether the aliens received "notice in accordance with paragraph . . . (2)." § 1229a(b)(5)(C)(ii).

They each did. Paragraph (2) provides that, "in the case of any change or postponement in the time and place" of re-

moval proceedings, "a written notice shall be given" to the alien that includes "the new time or place of the proceedings" and the consequences of "failing . . . to attend such proceedings." § 1229(a)(2)(A). Each requirement was met here. Campos-Chaves, Singh, and Mendez-Colín were notified of the time of the hearing and the consequences of failing to appear. Those times were all "new": those notices were the first time any of the aliens were informed when those specific hearings would take place. And those notices were for the hearings which they missed, and at which they were ordered removed. All three thus in fact received "notice in accordance with paragraph (1) or (2)" within the meaning of § 1229a(b)(5)(C)(ii).

The aliens argue otherwise, focusing on the requirement that paragraph (2) notice be given "in the case of any change or postponement in the time and place of such proceedings." In their view, there cannot have been a "change" in the time of the proceedings if no time had ever been set. The same goes for the requirement that paragraph (2) notice give "the new time or place of the proceedings." According to the aliens, there cannot be a "new" time without an old time. In effect, the aliens think that there cannot be paragraph (2) notice without an earlier paragraph (1) notice.

We reject both textual arguments. The aliens take too narrow a reading of the term "change." In their telling, "change" means "substitution," and substitution presupposes that there was a date before. See Brief for Petitioner Campos-Chaves 16–17. But to "change" can also mean "to replace with another or others of the same kind or class," "to switch to another," to "alter," or to "modify." Webster's Third New International Dictionary 373–374 (1986). What happened here fits under any of those definitions. The notice of hearing Campos-Chaves received "changed"—that is, "replaced," "switched," or "substituted"—a "date to be set" and a "time to be set" to "Sep 20, 2005," and "9:00 A.M.," respectively. App. 50. The notice of hearing Singh re-

ceived "changed" the "TBD" in his NTA to "Dec. 12, 2018," and "9:00 A.M." *Id.,* at 1. And the notice of hearing Mendez-Colín received "changed"—that is, "altered" or "modified"—the time and place of his proceedings by adding a hearing on September 15, 2003, at 9 a.m. The aliens' cramped reading of "change" is out of place here, especially given that the statute refers to "*any* change." § 1229(a)(2) (emphasis added); see *Patel* v. *Garland,* 596 U. S. 328, 338 (2022) ("[T]he word 'any' has an expansive meaning" (some internal quotation marks omitted)).

The aliens' argument that a "new" time or place requires an "old" time or place fares no better. In fact, it runs against how that word is ordinarily used. No one thinks that congratulating a couple on having a "new" baby implies that the couple is replacing an "old" baby. The word "new" describes something that has "originated or occurred lately," Webster's Third New International Dictionary, at 1522, or is "novel," *ibid.* The times provided by the aliens' notices of hearing were all those things. The first occasion on which Campos-Chaves, Singh, and Mendez-Colín were informed of the time of the particular hearing was when they received their hearing notices. Nonetheless, they failed to show up at those hearings, and in their absence they were ordered removed. They received a "notice in accordance with" paragraph (2), and thus cannot seek rescission under § 1229a(b)(5)(C)(ii).

Finally, the aliens argue that we have already decided that a paragraph (2) notice requires that the alien has received an adequate NTA. They point to our statement in *Pereira* that "paragraph (2) presumes that the Government has already served [an NTA] that specified a time and place" because "[o]therwise, there would be no time or place to 'change or postpon[e].'" 585 U. S., at 210 (quoting § 1229(a)(2)). That case concerned the "narrow question" of the operation of the so-called stop-time rule. *Id.,* at 202. To be eligible for cancellation of removal relief, an alien must

have been "physically present in the United States for a continuous period of not less than 10 years." § 1229b(b)(1)(A). Under the stop-time rule, however, an alien's time in the country generally ceases to count when he "is served a notice to appear under section 1229(a)." § 1229b(d)(1)(A). In *Pereira*, we decided that, for a notice to qualify as an NTA and to trigger the stop-time rule, it must include time and place information. *Id.*, at 202.

We did not reach out to decide today's question in that case. The meaning of § 1229(a)(2) was not at issue in *Pereira*. Indeed, when the Government in *Pereira* argued that § 1229b(d)(1)(A)'s reference to a "notice to appear under section 1229(a)" referred to paragraph (2) as well, the Court's first—and sufficient—response was that the "broad reference" to § 1229(a) was "of no consequence," because "only paragraph (1) bears on the meaning of a 'notice to appear.'" *Id.*, at 209. Only then did the Court go on to state the language on which the aliens rely so heavily—that paragraph (2) "presumes" an adequate NTA, and that paragraph (2) therefore, "*[i]f* anything," "bolsters" the bottom-line conclusion that an NTA must include time and place information. *Ibid.* (emphasis added). To the extent *Pereira* discussed paragraph (2), its language was mere dicta.[1]

Today's decision does not mean that the Government is free of its obligation to provide an NTA. That document has an important place within the statutory scheme because it contains information that aliens may need to present their case, including the conduct for which they are charged and

---

[1] The aliens' invocation of *Niz-Chavez* v. *Garland*, 593 U. S. 155 (2021), fares no better. In that case, we recognized that § 1229(a)(2) "permits [the Government] to send a supplemental notice amending the time and place of an alien's hearing if logistics require a change." *Id.*, at 170. Thus, if it turns out that the chosen time and place in the NTA is inconvenient, the Government is free to amend it through a paragraph (2) notice. *Ibid.* That point remains true even if there are other instances in which paragraph (2) notices may issue.

the provisions of law they allegedly violated.   See §§ 1229(a)(1)(A)–(E).   Although an alien who receives only paragraph (2) notice must still attend the hearing or face in absentia removal, he can raise issues regarding incomplete notice at that time.   That gives the immigration judge a chance to reschedule the hearing to cure any prejudice from the missing information.   But § 1229a(b)(5)(C)(ii) does not allow aliens to seek rescission of removal orders in perpetuity based on arguments they could have raised in a hearing that they chose to skip.

\*          \*          \*

We affirm the judgment of the Fifth Circuit and reverse the Ninth Circuit's judgment in *Garland* v. *Mendez-Colín*. We vacate the Ninth Circuit's judgment in *Garland* v. *Singh*, and remand that case for further proceedings consistent with this opinion.[2]

*It is so ordered.*

JUSTICE JACKSON, with whom JUSTICE SOTOMAYOR, JUSTICE KAGAN, and JUSTICE GORSUCH join, dissenting.

Although Congress allows the Government to seek removal of noncitizens in absentia, it tempers that power with process.   Mandatory removal of a noncitizen who fails to attend a scheduled removal hearing is available.   8 U. S. C. § 1229a(b)(5)(A).   But to obtain such a removal order, the Government must satisfy certain procedural prerequisites. See *ibid.*   Relevant here, the Government must have provided the noncitizen with specific forms of notice that contain specific information.   *Ibid.* (referencing §§ 1229(a)(1)–(2)). A noncitizen who has been ordered removed in absentia but has not received the required notice may seek to have the

_____

[2] The Ninth Circuit's holding that Singh had shown that he failed to receive "notice in accordance with paragraph (1) or (2)" meant that it did not reach his alternative argument that he could seek rescission under § 1229a(b)(5)(C)(i).   24 F. 4th 1315, 1320 (2020).   Neither do we.

removal proceedings reopened and his removal order rescinded. §1229a(b)(5)(C)(ii).

For years, the Government has failed to ensure that one form of required notice—a "notice to appear" (hereinafter NTA)—contains all the information the statute mandates. See §1229(a)(1). Specifically, the Government has issued NTAs that lack the exact time (and date) of a noncitizen's removal hearing. Contra, §1229(a)(1)(G)(i). This conspicuous omission has twice before garnered our attention in cases concerning a noncitizen's plea for discretionary relief from removal—most recently, just three Terms ago. See *Niz-Chavez* v. *Garland*, 593 U. S. 155 (2021); *Pereira* v. *Sessions*, 585 U. S. 198 (2018). And twice over, this Court made clear that when the Government issues an NTA, that document must contain the time-and-place particulars that the statute requires.

Today's cases arise because the Government persisted with its practice of issuing facially defective NTAs in the wake of our two prior pronouncements. But, apparently, the third time is the charm, for the majority now finally blesses the Government's abject noncompliance with the statute's unequivocal command. The Court concludes that a noncitizen whose NTA does not contain the time-and-date information that §1229(a)(1) requires has no recourse from an in absentia removal order if the Government subsequently provides some followup notice identifying the time and date of the proceeding he missed. *Ante*, at 450–451. But that holding defies the plain text and context of the statute, sidesteps our precedents, and upends the careful in absentia removal framework Congress has crafted. So, I respectfully dissent.

## I

Because a noncitizen may seek rescission only if he "demonstrates that [he] did not receive notice in accordance with paragraph (1) or (2) of section 1229(a)," §1229a(b)(5)(C)(ii), I agree with the majority that the central question in this

litigation is what it means to receive notice "in accordance with paragraph (1) or (2)," *ibid*. As the parties frame the issue, the question is whether a noncitizen who has been ordered removed in absentia can seek rescission if the Government initially fails to identify a time and date for the removal hearing, as paragraph (1) requires, but provides such information at a later date, purportedly under paragraph (2).[1] The majority reads "notice in accordance with paragraph (1) or (2) of section 1229(a)," § 1229a(b)(5)(C)(ii), to preclude a motion to reopen under these circumstances. In my view, the majority's reasoning is flawed and leads to the wrong conclusion.

A

To understand why, one must first be clear-eyed about the Government's arguments, and also the majority's assertions. No one disputes that § 1229(a) establishes a mandatory process for the initiation of removal proceedings that compels the Government to provide "written notice" to any noncitizen it intends to remove as inadmissible or deportable.

Paragraph (1) states that "written notice (in this section referred to as a 'notice to appear') shall be given in person . . . or, if personal service is not practicable, through service by mail." § 1229(a)(1). That provision then proceeds to list not one or two but *seven* categories of information that must

---

[1] I will assume, *arguendo*, that rescission is the only legal argument implicated by these facts, given the parties' presentations. It is noteworthy, however, that the same core question also arises two subdivisions earlier—under § 1229a(b)(5)(A)—which authorizes the issuance of an in absentia removal order in the first place only "after written notice required under paragraph (1) or (2) of section 1229(a) . . . has been provided to the [noncitizen]," and only if the Government "establishes by clear, unequivocal, and convincing evidence that the written notice was so provided." Thus, it is not at all clear that defects on the face of an NTA should be addressed as a matter of reopening and rescission (with the noncitizen bearing the burden) rather than as part of an assessment of the validity of the removal order itself, given the Government's burden of proof and the arguable facial invalidity of the notice.

be "specif[ied]" in the NTA—including "[t]he acts or conduct alleged to be in violation of [the] law," §1229(a)(1)(C); the fact that the noncitizen "may be represented by counsel" during the removal proceedings, §1229(a)(1)(E); and "[t]he time and place at which the proceedings will be held," §1229(a)(1)(G)(i).

Paragraph (2) also requires the Government to provide "a written notice" to removable noncitizens under specified circumstances. §1229(a)(2). But, unlike paragraph (1), that provision applies only "in the case of any change or postponement in the time and place of such proceedings." *Ibid.* It requires that "a written notice shall be given in person," or "through service by mail" if "personal service is not practicable." *Ibid.* Paragraph (2) further specifically identifies the two categories of information that this particular notice must contain: "(i) the new time or place of the proceedings, and (ii) the consequences under section 1229a(b)(5) of this title of failing, except under exceptional circumstances, to attend such proceedings." *Ibid.*

So far, so good. Everyone agrees up to this point. The dispute here arises because the Government insists that its chronic failure to provide *complete* NTAs under §1229(a)(1)—*e. g.*, notices that contain time-and-date information—is of no moment with respect to any subsequent in absentia removal effort. So long as the Government provides the noncitizen with a paragraph (2) notice of the time and date of a removal hearing that the noncitizen subsequently misses, the noncitizen cannot reopen his removal proceeding, the Government claims.

Consider the cases before us. As the majority has explained, *ante*, at 452, each of the noncitizens here received a statutorily deficient NTA—deficient because it was missing the time and date of a removal proceeding. The NTAs the Government provided instead stated that information as either "TBD" or "to be set." App. 10–12, 44–46, 53–54. Both the majority and the Government acknowledge that

such notices were deficient under the statute. See *ante*, at 461; Brief for Attorney General 26. Each of the noncitizens later received one or more followup documents that provided time-and-date information for a removal hearing. Each of the noncitizens ultimately failed to attend a hearing noticed by such a followup document and was ordered removed in absentia. And each of the noncitizens then sought to have his in absentia removal order rescinded on grounds of deficient notice.

According to the Government, having received notice of the time and date of their removal hearings through a subsequent notice issued per paragraph (2), these noncitizens cannot show that they "did not receive notice in accordance with paragraph (1) or (2) of section 1229(a)." § 1229a(b)(5)(C)(ii). Therefore, their removal proceedings cannot be reopened, or their removal orders rescinded. Brief for Attorney General 16–17.

The majority agrees with this reading of the statute, making three analytical moves to justify its conclusion. One: It declares that, for purposes of § 1229a(b)(5)(C)(ii), receipt of *either* an NTA *or* a paragraph (2) notice can suffice to defeat rescission of an in absentia removal order. *Ante*, at 457–459. The majority similarly reads § 1229a(b)(5)(A), the in absentia removal provision, to allow a noncitizen to be removed in absentia after he is provided with either form of notice. *Ibid.* (But the majority also appears to realize that, taken "[l]iterally," this reading would allow a noncitizen to be removed without recourse whenever he receives a notice to appear, even if the Government later changes the hearing date without telling him. *Ante*, at 460.) So two: The majority declares that the notice "that matters" is the one that informed the noncitizen of the time and date of the hearing he missed. *Ante*, at 460–461; see also *ante*, at 460 (explaining that, under § 1229a(b)(5)(A), "'the written notice'" the Government must provide "is tied to the singular proceeding missed, and at which the alien was 'removed in absentia'").

Thus, three: The majority concludes that, despite the Government's provision of a defective NTA, all the noncitizens here "received a proper paragraph (2) notice for the hearings they missed and at which they were ordered removed," so "they cannot seek rescission of their in absentia removal orders on the basis of defective notice." *Ante*, at 450–451; see also *ante*, at 461–462.

As I explain in Parts I–B and I–C, *infra*, the primary problem with the majority's statutory analysis is that it unjustifiably cleaves the paragraph (2) notice from paragraph (1)'s NTA requirement. In the majority's view, the Government can provide the statutorily required notice if it issues *either* form of notice to a noncitizen, so long as the notice the Government provided and the noncitizen received corresponds with the hearing the noncitizen missed. See *ante*, at 457–461. But this maneuver misreads the plain text of the statute in at least two critical respects: It ignores the fact that the statute Congress wrote makes an NTA issued under paragraph (1) indispensable, and, relatedly, it disregards the obviously supporting and secondary role that paragraph (2) notices play with respect to this statutory scheme.

B

The text of § 1229(a) plainly refutes the majority's contention that *either* an NTA under paragraph (1) *or* a subsequent notice under paragraph (2) suffices because the notice that "matters" for the purpose of in absentia removal is whichever one corresponds to the missed hearing at which removal is ordered. *Ante*, at 460–461.

Paragraph (1) unequivocally states that "[i]n removal proceedings under section 1229a of this title," an NTA "*shall be given*" to the noncitizen. § 1229(a)(1) (emphasis added). An NTA is "the basis for commencing a grave legal proceeding," akin to "'an indictment in a criminal case [or] a complaint in a civil case.'" *Niz-Chavez*, 593 U. S., at 163–164 (quoting Tr. of Oral Arg. in *Pereira* v. *Sessions*, O. T. 2017, No. 17–459,

JACKSON, J., dissenting

p. 39; alteration in original).   Nothing in the text of § 1229(a) betrays any hint that paragraph (1)'s dictates are optional. And the Government does not contest this; it acknowledges that an NTA under paragraph (1) of § 1229(a) is indispensable because this particular form of notice is what initiates the removal process as a matter of law.   Tr. of Oral Arg. 49.

Furthermore, as I mentioned previously, a paragraph (1) NTA *must* contain certain specific information, all of which Congress apparently thought important for a noncitizen facing removal to have at the outset.   §§ 1229(a)(1)(A)–(G). Much of the required information is unique to NTAs issued per paragraph (1).   See, *e. g.*, §§ 1229(a)(1)(C)–(D) (requiring notice of the "acts or conduct alleged to be in violation of law" and the "charges against the" noncitizen).   Section 1229(a)(1) also treats all of the required information equally—none of the listed elements is more or less dispensable than any other.

To be sure, two pieces of information that Congress has mandated be provided in an NTA—the time and place of a removal proceeding, § 1229(a)(1)(G)(i), and the consequences of failing to appear, § 1229(a)(1)(G)(ii)—overlap in kind with information that must be provided in a paragraph (2) notice. But that fact does not undermine the mandatory nature of paragraph (1)'s requirements.   We have already held that an NTA that does not contain the requisite time-and-place information does not qualify as an NTA at all.   *Pereira*, 585 U. S., at 202.   Nor does an NTA that is deficient in this way become retroactively transformed into one that satisfies § 1229(a)(1) if the Government backfills that missing information using a later notice.   *Niz-Chavez*, 593 U. S., at 170. Instead, "the government must issue a single statutorily compliant document."   *Id.*, at 163.

The indispensability of a complete NTA issued under paragraph (1) has consequences for the reasoning the majority puts forward here.   It means that providing this particular form of notice always and inevitably "matters" to the in ab-

sentia removal process, notwithstanding the majority's effort
to hide that ball by directing our attention to whichever no-
tice "informed the alien of the time and date of the hearing
the alien missed, and at which he was ordered removed"—
as if *that* is the notice that counts under the statute.  *Ante*,
at 460–461.

Put another way, whatever "notice in accordance with
paragraph (1) or (2)" might mean in §1229a(b)(5)(C)(ii), if the
Government has to issue an NTA that satisfies paragraph (1),
which it does, that language cannot mean the Government
can *choose* to provide *either* a paragraph (1) *or* paragraph (2)
notice and still be in compliance with the statute, as the
majority suggests.  And without that "either/or" pillar, the
majority's analysis collapses.

## C

The majority's reasoning further suggests that the indis-
pensability of an NTA per the statute is essentially irrele-
vant because, for rescission purposes, an incomplete NTA
can be cured with a paragraph (2) notice, standing alone.
By its nature, however, a paragraph (2) notice cannot stand
alone.  This is apparent on the face of the relevant statutory
provisions, which plainly establish, as the Ninth Circuit held,
that "there can be no valid notice under paragraph (2) with-
out valid notice under paragraph (1)."  24 F. 4th 1315, 1319
(2022) (case below).  Given this, even if we read §1229a(b)
(5)(C)(ii)'s "paragraph (1) or (2)" language to preclude rescis-
sion when noncitizens receive either a statutorily compliant
NTA under paragraph (1) or a valid hearing notice under
paragraph (2), the noncitizens here *did not receive either
one*.  The majority's contrary conclusion rests on a mis-
conception of the nature of the notice that paragraph (2)
requires.

### 1

Analogizing to another common situation: A paragraph (2)
notice is the functional equivalent of a change order.  See

Page Proof Pending Publication

1A P. Bruner & P. O'Connor, Construction Law § 4:1, p. 282 (2016) (describing a "'change'" in the construction context as "'an alteration to an existing contract requirement concerning work that is already required to be done'"). That is what the plain text of § 1229(a)(2) calls for, and it is how a paragraph (2) notice plainly operates. Assuming that the Government has complied with its pre-existing obligation under paragraph (1) to provide written notice of the noncitizen's duty to appear at removal proceedings at a particular time and place, paragraph (2) requires the Government to issue a supplemental notice "specifying . . . the *new* time or place of the proceedings" and reiterating the consequences of failing to attend, if sometime after the issuance of the NTA the time or place of the scheduled removal hearing changes. § 1229(a)(2) (emphasis added).

The analogy to change orders in the construction context illuminates the unavoidably interconnected relationship between a compliant NTA issued under paragraph (1) and the notice the Government must provide under paragraph (2). Ask any homebuilder. A customer who wants a new den, for example, submits a written request to the builder that specifies the details of her order—*e. g.*, construct a 12- by 12-foot room with two 48-inch fixed picture windows at a designated spot on the back of her house. Those are the indispensable terms of the mandate. But, if the customer later changes her mind about some aspect of this project— say, she wants the windows moved, or she wants the room enlarged to 16 by 16 feet—she submits a written change order notifying the builder of those particular alterations. The change order supplements the original request; it does not entirely supplant it. And the change order supersedes only the particular terms of the initial directive that have been changed. Consequently, the change order is only cognizable in relation to what came before.

So it is here. As the majority concedes, Congress has mandated that the Government, first, provide noncitizens

with a written NTA that specifically and comprehensively lists the terms of the removal proceeding mandate. That notice has to include the time and place of the noticed removal proceeding. § 1229(a)(1)(G)(i). Congress has also authorized the Government to make certain adjustments to that notice under specified circumstances, but only if the Government similarly provides a written notice of those altered terms. That is the work of a notice issued under paragraph (2). And, just as in the construction context, a paragraph (2) notice of the changed time or place has no effect independent of the original directive. A notice of change under paragraph (2) issues only if there is a changed circumstance, and it exists merely to update the terms that were previously set.

2

Setting aside analogous circumstances and using a dictionary to bear down on the words Congress used in § 1229(a)(2) leads to the same result. As a reminder, paragraph (2) provides that "[i]n removal proceedings . . . , in the case of any *change or postponement* in the time and place of such proceedings, . . . a written notice shall be given in person" to the noncitizen, and that notice must "specif[y] . . . the *new* time or place of the proceedings" and the consequences of failing to attend. §§ 1229(a)(2)(A)(i)–(ii) (emphasis added).

Homing in on the word "change," the majority first accuses the noncitizens of "tak[ing] too narrow a reading of th[at] term," since "change" can mean simply "'to replace,'" "'to switch,'" "to 'alter,' or to 'modify.'" *Ante*, at 462. As further support for this broad interpretation of change, the majority points to "any"—the provision says "any change"—which, according to the majority, suggests that Congress contemplated that the paragraph (1) NTA could omit the time and place of the removal proceeding, with the paragraph (2) notice "chang[ing]" that "TBD" to the actual time and place. *Ante*, at 463.

But the modifier "any" does not justify the majority's overbroad reading of "change or postponement" in § 1229(a)

(2)(A). It is true that "the word 'any' has 'an expansive meaning.'" *Patel* v. *Garland*, 596 U. S. 328, 338 (2022) (quoting *Babb* v. *Wilkie*, 589 U. S. 399, 405, n. 2 (2020)). But "any" does work under the noncitizens' reading of paragraph (2), too. It helps cover all potential changes to the pre-existing time and place that paragraph (1) requires the Government to designate. Especially when one considers the entire operative phrase—"any change or postponement in the time and place of such proceedings"—"any change" makes clear that notice must also issue when a hearing time is moved up, or when a venue is switched from one location to another.

In any event, the majority does not, and cannot, dispute that an ordinary meaning of "change" is "the action of replacing something with something else of the same kind or with something that serves as a substitute." Webster's Third New International Dictionary 374 (1993). The notice provisions at issue here reflect that kind of substitution on their face, because § 1229(a) mandates in paragraph (1) that the Government provide noncitizens with a complete NTA (with the time and place for the removal proceeding included) *at the outset*. The paragraph (2) notice only comes into play "in the case of any change . . . in the time and place of such proceedings." § 1229(a)(2)(A). Thus, among the various definitional possibilities the majority offers, it is this definition that makes the most sense of this particular statute. See *Abramski* v. *United States*, 573 U. S. 169, 179, n. 6 (2014) ("[C]ourt[s] should not interpret each word in a statute with blinders on, refusing to look at the word's function within the broader statutory context").

In short, use of the word "change" in the context of a statute that first requires something—*e. g.*, the setting of a time and place—presumes the earlier existence of that thing to be swapped out. The ordinary meaning of "postponement," too, requires the previous selection of a particular date or time. See Webster's Third New International Dictionary, at 1773 (defining "postpone" as "to hold back to a later time").

And the word "new" runs in the same circles. "New" can mean "other than the former or old." *Id.*, at 1522. So a "new" time likewise implies the earlier existence of an "old" time.

Thus, dictionary definitions indicate that in order for a notice issued under paragraph (2) to "change" the time or place of a proceeding to a "new" time or place, there must have been an old time or place to begin with. If the NTA did not comply with the statute in this way, then it is impossible for paragraph (2) notice to comply, either.

3

Even so, definitions alone often "do not equip us to resolve" a case. *Kucana* v. *Holder*, 558 U. S. 233, 245 (2010). We have long understood that words with "'many dictionary definitions . . . must draw [their] meaning[s] from . . . context.'" *Ibid.* (quoting *Ardestani* v. *INS*, 502 U. S. 129, 135 (1991)). "[S]tatutes must be read as a whole," and, here, notice under paragraph (2) "does not exist in a vacuum." *Guam* v. *United States*, 593 U. S. 310, 316 (2021) (internal quotation marks omitted).

That brings me back to where I started—with the observation that, when read in context, paragraph (2) requires a preceding written notice (like a standard change order does) and thus presupposes a compliant NTA. Not to belabor the point, but it bears noting that *all* the relevant context clues support this reading of the statute.

For example, notice under paragraph (2) follows the required NTA under paragraph (1) in the text of the statute. See § 1229(a). This ordering suggests the central role of NTAs in Congress's removal scheme, with paragraph (2) notices playing only a supporting part. Moreover, while paragraph (2) notices can and do work together with NTAs to convey essential information to noncitizens, they are hardly a team of equals. Also, a paragraph (2) notice, which contains far less content than an NTA, is patently supplemen-

tal insofar as it may not ever need to be issued. See § 1229(a)(2)(A).

The majority errs in interpreting "notice in accordance with paragraph (1) or (2)," § 1229a(b)(5)(C)(ii), by treating "or" as a standard disjunctive construct. See *ante,* at 457. That might generally be so. But here, the word "or" simply cannot be taken to mean that *either* notice in accordance with paragraph (1) *or* in accordance with paragraph (2) suffices under the statute because those two notices are by no means equivalent alternatives, as I have explained.[2]

It is clear on the face of this statute, then, that a paragraph (2) notice merely alters information that Congress has required be given previously, and, "especially when properly read in sequence as integral parts of a whole," the statute plainly "anticipates a predicate" NTA that complies with Congress's mandate. *Guam,* 593 U. S., at 317 (internal quotation marks and alteration omitted). As its "text and place within [the] comprehensive statutory scheme" show, *id.,* at 320, a notice under paragraph (2) cannot exist in the absence of a compliant NTA. The statute simply does not contemplate it.

## II

Our precedents in *Pereira* and *Niz-Chavez* addressed the relevant notice provisions and what they require of the Government, yet the majority barely pauses to acknowledge this. Both *Pereira* and *Niz-Chavez* concerned noncitizens' eligibility for a form of discretionary relief called cancellation of removal and the operation of the so-called stop-time rule. See §§ 1229b(b)(1), (d)(1)(A). Noncitizens who have accrued

---

[2] Considered in context, the word "or" in § 1229a(b)(5)(C)(ii) actually reinforces both the centrality of an NTA and the conditional nature of a paragraph (2) notice. Recall that a paragraph (2) notice is required only in the event of a change or postponement of the removal proceeding. § 1229(a)(2). The "or" in "paragraph (1) or (2)" thus expresses—in a way that "and" could not—that a notice under paragraph (2) will sometimes, but not always, be required.

10 years of continuous physical presence in the United States may be eligible for cancellation of removal, but under the stop-time rule, that period of continuous physical presence ends when the noncitizen "is served a notice to appear under section 1229(a)." *Ibid.* Then as now, the Government had failed to send noncitizens NTAs that included time-and-place information as § 1229(a)(1) requires.

In *Pereira*, we held that "[a] notice that does not inform a noncitizen when and where to appear for removal proceedings is not a 'notice to appear under section 1229(a)' and therefore does not trigger the stop-time rule." 585 U. S., at 202. In *Niz-Chavez*, we rejected the Government's view that a deficient paragraph (1) NTA is "complete and the stop-time rule kicks in whenever [the Government] finishes delivering all the statutorily prescribed information." 593 U. S., at 160. Rather, we said, the Government needs to supply noncitizens with a single, fully compliant NTA if it wishes to take advantage of the stop-time rule. *Id.,* at 172.

In both of those cases, we interpreted the notice regime just as the noncitizens do here. As the majority acknowledges, *ante,* at 463, we specifically observed in *Pereira* that, "[b]y allowing for a 'change or postponement' of the proceedings to a 'new time or place,' paragraph (2) presumes that the Government has already served a 'notice to appear under section 1229(a)' that specified a time and place as required by § 1229(a)(1)(G)(i)." 585 U. S., at 210. "Otherwise," we said, "there would be no time or place to 'change or postpone.'" *Ibid.* (alteration omitted). We thought then that the Government could only "exercise that statutory authority *after* it has served a notice to appear specifying the time and place of the removal proceedings." *Id.,* at 218 (emphasis added).

In *Niz-Chavez*, we doubled down. We recognized that "Congress expressly contemplated [the] possibility" that the Government would "issu[e] notices to appear with all the information § 1229(a)(1) requires—and then amen[d] the time or place information if circumstances required it" using

Page Proof Pending Publication

§ 1229(a)(2).   593 U. S., at 159.   We explained that "*once the government serves a compliant notice to appear*, [the statute] permits it to send a *supplemental* notice amending the time and place of an alien's hearing if logistics require a change."   *Id.*, at 170 (emphasis added).   We also suggested that an alternative reading would effectively nullify Congress's work to change the notice regime from one permitting the Government to specify the time and place for a noncitizen's hearing " 'in the order to show cause *or otherwise*,' " to one where "time and place information must be included in a notice to appear, not 'or otherwise.' "   *Id.*, at 167 (quoting § 1252b(a)(2)(A) (1994 ed.); emphasis in original).   That point is as salient now as it was then.

Our statements in *Pereira* and *Niz-Chavez* demonstrate that the Court twice before thought obvious the reading of the statute the noncitizens here propose.   Yet the majority now cries dicta.   The Court says the meaning of § 1229(a)(2) was not at issue in *Pereira,* which concerned the " 'narrow question' " of the operation of the stop-time rule.   *Ante,* at 463.   To be sure, "we are not necessarily bound by dicta should more complete argument demonstrate that the dicta is not correct."   *Kirtsaeng* v. *John Wiley & Sons, Inc.*, 568 U. S. 519, 548 (2013).   Here, however, "more complete argument" has served only to confirm our previous statements.

The argument the majority accepts today brushes aside what we said in *Pereira* without explaining why our statements—which are due a modicum of respect in any event, see *Cohens* v. *Virginia*, 6 Wheat. 264, 399 (1821)—were mistaken.   Addressing *Niz-Chavez* in only a footnote, the majority maintains that our observation that paragraph (2) notices allow the Government to change a "chosen time and place in the NTA . . . remains true even if there are other instances in which paragraph (2) notices may issue."   *Ante,* at 464, n. 1.   But that assertion simply fails to engage with the antecedent point—that Congress expected the Government to issue compliant NTAs *first*—and the implications it has for the interpretation of § 1229(a)(2).

And, in the end, we were not wrong. Under the uncomplicated statutory reading that *Pereira* and *Niz-Chavez* endorsed, the noncitizens here are not precluded from seeking rescission of their in absentia removal orders, because § 1229a(b)(5)(C)(ii) permits "a motion to reopen [removal proceedings] filed at any time" if the noncitizen can demonstrate that he "did not receive notice in accordance with paragraph (1) or (2)" of § 1229(a). Neither form of notice was provided under the circumstances presented here. As all agree, none of the noncitizens ever received a notice in accordance with paragraph (1). See *Pereira*, 585 U. S., at 202. And because a paragraph (2) notice presumes a statutorily compliant paragraph (1) notice, none of the noncitizens received notice in accordance with paragraph (2), either. That is true no matter how many would-be paragraph (2) notices the Government sent.[3]

## III

One final flaw bears mentioning. By snipping the thread that connects the notices Congress required in paragraphs (1) and (2) of § 1229(a), today's decision mangles the broader statutory scheme.

## A

The long and short of this critique is that reading the statute in the way the majority does fails to fully account for Congress's objectives when it comes to removal procedures, which have long included ensuring that noncitizens facing removal receive notice. The Government's statutory obligation to provide notice in the removal context has been a crucial aspect of federal immigration policy since at least the early 1950s. To this end, the Immigration and Nationality Act (INA) of 1952 specifically provided that a noncitizen must be "given a reasonable opportunity to be present at

---

[3] By the same logic, the Government should not have been able to obtain the noncitizens' in absentia removal orders under § 1229a(b)(5)(A) in the first place.

[the] proceeding" in which his deportability or removability is to be determined. §242(b), 66 Stat. 209, codified at 8 U. S. C. §1252(b) (1952 ed.). With respect to in absentia removal, the INA further provided that if the noncitizen "without reasonable cause fail[ed] or refuse[d] to attend or remain in attendance," a "special inquiry officer" could "proceed to a determination in like manner as if the alien were present." *Ibid.*

Notably, at that time, an immigration officer's decision to remove a noncitizen in absentia was discretionary. *Ibid.* In 1990, however, Congress amended the INA to provide, in certain circumstances, for mandatory in absentia deportation of noncitizens who failed to appear for their proceedings. See Immigration Act of 1990, §545(a), 104 Stat. 5061–5065, codified at 8 U. S. C. §1252b(c)(1) (1994 ed.). Nonetheless, the Government still routinely encountered "[p]rocedural [i]ssues" in its efforts to remove inadmissible or deportable noncitizens. H. R. Rep. No. 104–469, pt. 1, p. 122 (1996). Those issues included deportable or inadmissible noncitizens sometimes "frustrat[ing] removal through taking advantage of certain procedural loopholes" in the process. For example, some noncitizens facing removal would "simply fail to appear for their deportation hearing," and "some immigration judges . . . decline[d] to exercise their authority to order an alien deported in absentia" due to "lapses (perceived or genuine) in the procedures for notifying aliens of deportation proceedings." *Ibid.*[4]

───────────

[4] This Court has previously described the notice regime of that era. For example, the Government back then initiated removal proceedings by issuing a written notice called an "'order to show cause.'" *Niz-Chavez* v. *Garland*, 593 U. S. 155, 167 (2021). By statute, the Government was permitted to specify the time and place for a noncitizen's hearing "'in the order to show cause *or otherwise.*'" *Ibid.* (citing 8 U. S. C. §1252b(a) (2)(A) (1994 ed.); emphasis in original). But this statutory language provided flexibility, and meant that "orders to show cause did not necessarily include time-and-place information." *Pereira* v. *Sessions*, 585 U. S. 198, 214, n. 9 (2018).

Congress endeavored to address these kinds of problems, among other things, when it established the mandatory in absentia removal provisions that govern these cases as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). See § 304(a), 110 Stat. 3009–587 to 3009–590; see also 8 U. S. C. §§ 1229(a), 1229a. Notably, however, Congress did not absolve the Government of its obligation to provide notice of removal proceedings. Nor did it make receipt of notice irrelevant to whether a noncitizen who does not show up to his hearing can later contest his removal. To the contrary, notice features prominently in IIRIRA's in absentia removal process—it is specifically mentioned in four of the five statutory subdivisions that constitute Congress's in absentia mandatory removal directives.[5] And, rather than devising a process in which a noncitizen who misses his hearing must be removed regardless, Congress has made clear that the consequences for failing to appear for scheduled removal proceedings can turn on whether notice was provided, or received, under the terms of the statute. See, *e. g.*, § 1229a(b)(5)(C)(ii).

B

The resulting in absentia removal scheme constitutes a balancing of interests and obligations that is well within Congress's policy prerogatives. Congress has also clearly expressed its intent in this regard, for when paragraphs (1) and (2) of § 1229(a) are read naturally, in context, and with an understanding of Congress's objectives, the entire scheme flows seamlessly.

---

[5] See § 1229a(b)(5)(A) (authorizing in absentia removal only for noncitizens who have been provided "written notice required under paragraph (1) or (2) of section 1229(a)"); (B) (requiring "[n]o written notice" before in absentia removal if a noncitizen failed to provide his address); (C) (permitting motions to reopen at any time if a noncitizen demonstrates that he "did not receive notice in accordance with paragraph (1) or (2) of section 1229(a)"); (D) (limiting judicial review to, *inter alia*, the "validity of the notice provided to the" noncitizen).

JACKSON, J., dissenting

To recap: If the Government issues, and the noncitizen receives, the statutorily required notice—*i. e.*, the notice mandated by paragraph (1) of § 1229(a), or, when necessary, by paragraphs (1) and (2)—yet the noncitizen fails to appear at the scheduled removal proceeding, she is subject to a mandatory, nonrescindable removal order.  But if the Government fails to provide notice in accordance with the statute, the in absentia removal order is subject to reconsideration, meaning that, upon request, the noncitizen's removal proceedings may be reopened.[6]

This symmetry of notice-related mandates and accountability incentivizes both noncitizens and the Government to follow Congress's dictates.  It also facilitates efficient removal of deportable and inadmissible noncitizens *while simultaneously* preserving the fairness and procedural integrity of the removal process in individual cases.  The majority's interpretation, which basically amounts to a refusal to accept these policy choices, supplants this dual objective.

Indeed, and perhaps most concerning, under the majority's reading of the statutory provisions at issue here, Congress's goals are plainly thwarted, for a noncitizen may be removed in absentia even if the Government fails to provide him with information that complies in both form and substance with Congress's commands.  The removal scheme's orderly progression actually breaks down when the Government fails, in systemic fashion, to send statutorily compliant NTAs. And for years, that is exactly what has happened, because the NTAs that the Government routinely issued lacked the time, date, or place of a noncitizen's initial removal hearing. Brief for Attorney General 50.

------

[6] It is far from clear that rescission is automatic under the statute.  See § 1229a(b)(5)(C)(ii) (providing that "[s]uch an order *may* be rescinded" (emphasis added)).  Relevant regulations, too, give an immigration judge "discretion to deny a motion to reopen even if the moving party has established a prima facie case for relief."  8 CFR § 1003.23(b)(3) (2021).  But that question is not before the Court.

Rather than just complying with § 1229(a)'s notice requirements, the Government now urges us to interpret § 1229a(b)(5)(C)(ii) to preclude reopening of certain in absentia removal proceedings, out of a worry that "hundreds of thousands" of individuals who have "been ordered removed in absentia would be able to undo those orders" under the noncitizens' reading of the statute. *Ibid.* But this is a problem of the Government's own making. And it is completely within the Government's power to fix. At the very least, it seems wildly counterintuitive for this Court to adopt the Government's permissive reading of the statute—in contravention of its plain text—so as to help the Government avoid the prescribed consequences of its chronic noncompliance with Congress's mandates.

There is also no rational limiting principle. Today, the Government opts to omit from the NTA the time and date of the removal proceeding. The majority now says that's no problem—the Government may nevertheless seek and receive binding in absentia removal so long as the noncitizen received a paragraph (2) notice that filled in the blanks. See *ante,* at 458–460, 461–462. But what prevents the Government from removing a noncitizen whose notice to appear is deficient in other critical respects? The "next chapter in the same story," *Niz-Chavez,* 593 U. S., at 159, might involve a noncitizen whose notice to appear also failed to inform her that she can be represented by counsel in removal proceedings. See § 1229(a)(1)(E). That information is required only in paragraph (1) notices, not paragraph (2) notices. By the majority's logic, a noncitizen in that position could be ordered removed in absentia and barred from seeking rescission of her order without ever being informed of her ability to be represented by an attorney. Even the Government has conceded that nothing in its reading of the statute prevents that outcome. See Tr. of Oral Arg. 17–21, 50–51.

One can imagine other troubling scenarios; for example, a notice to appear that omits the charges against a noncitizen.

See § 1229(a)(1)(D). That information, too, is required only in a paragraph (1) notice. If a noncitizen receives such a defective NTA followed by a purported paragraph (2) notice and fails to attend her hearing, may she be removed in absentia having never learned the charges against her? The Government assures us that statutory safeguards prevent *that* outcome at the very least. It says that in those circumstances, it could not satisfy its burden of proving to an immigration judge by "'clear, unequivocal, and convincing evidence'" that the noncitizen is removable. Reply Brief 23 (quoting § 1229a(b)(5)(A)). But what if the removal hearing is held in absentia, and the Government simply informs the immigration judge of the charges against the noncitizen at that time? Would it matter that the absent noncitizen was kept completely in the dark about the charges? The majority gives no answer, other than that noncitizens "could have raised [this issue] in a hearing that they chose to skip." *Ante,* at 465.

The majority waves away these legitimate concerns about how far the Government can go in deviating from what § 1229(a)(1) or (2) requires, by blithely declaring that today's decision does not "free" the Government of its obligation to provide a compliant NTA. *Ibid.* But it is hard to square that statement with what is actually happening on the ground. The Government has already flouted its NTA obligation for years now. Though the Court might not be expressly authorizing this state of affairs, today's blunting of the statutory consequence for the Government's systemic failure to comply with § 1229(a) removes any possible incentive for the Government to change course now.

Finally, the majority says that a noncitizen who receives a noncompliant NTA followed by a paragraph (2) notice can always "attend the hearing" to protest the deficient NTA. *Ibid.* That is entirely beside the point. Congress put the burden on the Government to send complete NTAs to noncitizens facing removal every time it initiates a removal pro-

ceeding. Instead of requiring the Government to shoulder that burden, the majority effectively shifts it onto the noncitizens—individuals perhaps unfamiliar with this country and its laws—tasking them with the responsibility of addressing the Government's mistakes. That is not the statute Congress wrote.

\*          \*          \*

When the Government issues an NTA under paragraph (1) that lacks time and date information but follows up with a notice under paragraph (2) that sets the time and date of a removal hearing that the noncitizen subsequently misses, I fully understand the instinct to conclude that the Government's initial lack of compliance was insignificant. Some might even think it unfair that noncitizens could seek rescission of their removal orders based on an initial notice that seems only *technically* defective, given the Government's subsequent action. My response to them is simple: Congress thought otherwise. The statute it wrote specifically establishes the what, when, and how of the notice that is due to noncitizens facing removal. The statute also allows noncitizens who have been ordered removed in absentia to seek rescission of the removal order if the required notice is not received. I can no more judge that policy decision than I can change it. Today, the Court makes the unfortunate mistake of doing both.

## Reporter's Note

The attached opinion has been revised to reflect the usual publication and citation style of the United States Reports. The revised pagination makes available the official United States Reports citation in advance of publication. The syllabus has been prepared by the Reporter of Decisions for the convenience of the reader and constitutes no part of the opinion of the Court. A list of counsel who argued or filed briefs in this case, and who were members of the bar of this Court at the time this case was argued, has been inserted following the syllabus. Other revisions may include adjustments to formatting, captions, citation form, and any errant punctuation. The following additional edits were made:

None