**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-1356**

ABDULATEEF SHOGUNLE,

       Petitioner,

       v.

ERIC H. HOLDER, JR., Attorney General,

       Respondent.

**No. 08-1765**

ABDULATEEF SHOGUNLE,

       Petitioner,

       v.

ERIC H. HOLDER, JR., Attorney General,

       Respondent.

On Petitions for Review of Orders of the Board of Immigration Appeals.

Argued: May 12, 2009          Decided: July 8, 2009

Before MOTZ, GREGORY, and DUNCAN, Circuit Judges.

Petitions granted by unpublished per curiam opinion.

**ARGUED:** David Christopher Drake, JOHNSON & ASSOCIATES, PC, Arlington, Virginia, for Petitioner. Blair Timothy O'Connor, UNITED STATES DEPARTMENT OF JUSTICE, Office of Immigration Litigation, Washington, D.C., for Respondent. **ON BRIEF:** Randall L. Johnson, JOHNSON & ASSOCIATES, PC, Arlington, Virginia, for Petitioner. Gregory G. Katsas, Assistant Attorney General, John C. Cunningham, Senior Litigation Counsel, UNITED STATES DEPARTMENT OF JUSTICE, Office of Immigration Litigation, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

On December 4, 2001, Abdulateef Shogunle was admitted into the United States as a non-immigrant visitor with privileges to remain until March 3, 2002. However, Shogunle did not depart at the end of this period. He subsequently married a U.S. citizen, but on October 26, 2006, the U.S. Citizenship and Immigration Services ("USCIS") of the Department of Homeland Security ("DHS") denied his application for adjustment of status based on his marriage. The same day, DHS personally served Shogunle with a notice to appear in removal proceedings, and he acknowledged service with his signature. The notice instructed Shogunle to appear in the Baltimore immigration court on January 3, 2007. The address on the notice was that provided by Shogunle in his application for adjustment of status.

Shogunle appeared at the immigration court as directed. However, at that point, DHS had not filed the notice to appear with the immigration court; therefore, the court did not have jurisdiction over Shogunle's case. Shogunle was informed that he would receive information about a future hearing. DHS filed the notice to appear with the immigration court on January 18 or 26, 2007.[*] On February 1, 2007, Shogunle moved. However, prior

---

[*] The notice bears two date stamps, and the Board of Immigration Appeals relied on the latter date.

3

to or immediately after his move, Shogunle notified DHS of his new address and set up mail forwarding with the U.S. Postal Service. Nevertheless, on February 13, 2007, the immigration court sent a notice to Shogunle's previous address alerting him to a hearing on April 11, 2007. Because the notice was sent to his previous address and, for reasons unknown, was not forwarded to his new address, Shogunle did not receive it. On April 11, the immigration judge noted that Shogunle had failed to appear at the hearing and issued an order in absentia to remove Shogunle from the United States. The order was served by mail to Shogunle's original address and was forwarded to his new address.

The immigration judge denied Shogunle's motion to rescind the order and reopen his removal proceedings, and the BIA dismissed Shogunle's appeal on February 26, 2008. The BIA also denied Shogunle's motion for reconsideration, and Shogunle petitioned this Court to review both decisions. We have consolidated the two actions.

I.

"Deportation and asylum hearings . . . are subject to the requirements of procedural due process. We review de novo a claim that the procedures utilized in such hearings contravened due process or the [Immigration and Nationality Act]." Rusu v.

4

INS, 296 F.3d 316, 320 (4th Cir. 2002) (internal citations and quotations omitted). Pursuant to 8 U.S.C. § 1229a(b)(5)(C) (2006), failure to appear at a deportation proceeding shall result in an order of removal that may be rescinded only if the failure to appear was the result of "exceptional circumstances" or "the alien demonstrates that the alien did not receive [proper] notice." Shogunle relies on the second part of § 1229a(b)(5)(C), failure to receive proper notice. The requisite notice procedures are set forth in 8 U.S.C. § 1229(a)(1) (2006).

Neither party disputes that Shogunle provided his new address to DHS. The question on which this case turns is whether Shogunle was also required to inform the immigration court of his change of address. The notice to appear required Shogunle to "notify the Immigration Court immediately by using form EOIR-33 whenever you change your address or telephone number <u>during the course of this proceeding</u>." (J.A. 119 (emphasis added).) However, because DHS did not file the notice with the immigration court prior to Shogunle's original hearing, the court did not have jurisdiction on the hearing date. 8 C.F.R. § 1003.14(a) (2009) ("Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service."). Thus, the critical question is whether a

5

"proceeding" had begun during which Shogunle would be required to keep the court informed of any change of address. If not, then his obligation would have been only to notify DHS of his new address, which he did.

Logically, Shogunle's argument must carry the day. The notice with which he was served named a hearing date, and Shogunle showed up to court on that hearing date. However, the court did not have jurisdiction as of that date. Because the immigration court did not yet have jurisdiction, it could not order Shogunle to do anything. Indeed, it was still within the discretion of DHS whether to file the notice with the immigration court, and it was possible that the court might never have jurisdiction. Therefore, the logical entity with which to lodge a change of address would be DHS, since it controlled whether the action would even proceed any further. Granted, DHS did file the notice to appear with the immigration court prior to Shogunle's move. It is therefore arguable that Shogunle was under the jurisdiction of the immigration court at that point and thus under its change of address requirements. However, Shogunle was unaware of this development, and we cannot say that it was Shogunle's burden to keep in constant contact with the court to determine when, if ever, the court would have jurisdiction.

II.

On the facts with which we are presented, Shogunle properly notified the government of a change in his address, and the notice of the second hearing that was sent to his previous address was defective. We hereby grant Shogunle's petitions for review, reverse the BIA, and remand this case with instructions to reopen Shogunle's removal proceedings.

PETITIONS GRANTED