# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 22-3102

———————————————

Aziz El Manyary

*Petitioner*

v.

Pamela Bondi, Attorney General of the United States[1]

*Respondent*

——————————

Petition for Review of an Order of the
Board of Immigration Appeals

——————————

Submitted: December 19, 2024
Filed: February 21, 2025

——————————

Before LOKEN, ERICKSON, and KOBES, Circuit Judges.

——————————

ERICKSON, Circuit Judge.

Aziz El Manyary, a native and citizen of Morocco, entered the United States legally in 2006. He married a United States citizen and applied to adjust his status with U.S. Citizenship and Immigration Services ("USCIS"). When his visa expired,

---

[1]Pamela Bondi has been appointed to serve as Attorney General of the United States and is substituted as respondent pursuant to Federal Rule of Appellate Procedure 43(c).

USCIS began removal proceedings, and an immigration judge ("IJ") ordered him removed *in absentia*. Seven years later, El Manyary filed a motion to reopen proceedings and rescind the *in absentia* removal order. Both the IJ and the Board of Immigration Appeals ("BIA") denied his request on the grounds that it was untimely. El Manyary then waited five more years before filing a second motion to reopen. The BIA also denied this motion as untimely. El Manyary petitions for review. We have jurisdiction pursuant to 8 U.S.C. § 1252(b)(2) and we deny the petition.

## I.     BACKGROUND

El Manyary entered the United States in March 2006 on a nonimmigrant K-1 visa because he was engaged to marry a U.S. citizen. His visa allowed him to remain in the United States until June 12, 2006. Just prior to his visa's expiration, El Manyary got married and filed a Form I-485 petition to adjust his status to that of a lawful permanent resident.

When an alien files a Form I-485, the Attorney General has discretion to make him a permanent resident so long as the alien is, among other things, "admissible." 8 U.S.C. § 1255(a). To determine admissibility, USCIS conducts an interview. 8 C.F.R. § 245.6. It scheduled El Manyary's interview for October 2006 and provided written notice to both El Manyary and his wife. See id. § 103.2(b)(9) (empowering USCIS to require a spouse's attendance at an interview). El Manyary and his wife failed to appear, reschedule, or explain their absence, so USCIS denied his petition.

El Manyary took no further action, and his K-1 visa lapsed. In December 2006, USCIS sent him an initial notice to appear asserting he was removable under 8 U.S.C. § 1227(a)(1)(B) as an alien who had remained in the country longer than permitted. The notice instructed El Manyary to appear before an immigration court in Bloomington, Minnesota, at a date and time to be determined. Later, USCIS sent a notice of hearing setting El Manyary's hearing for June 6, 2007.

At this time, El Manyary hired an immigration lawyer and began divorce proceedings. His lawyer in the immigration case moved to continue the June 2007 hearing. The immigration court granted the request and issued a third notice setting the hearing for July 11, 2007. Before that date, El Manyary finalized his divorce and moved to Florida. Once again, El Manyary failed to appear at his hearing and the IJ ordered him removed *in absentia*.

El Manyary waited almost seven years before moving to reopen his case and rescind the removal order. By this time, he had remarried in Florida. For the first time, El Manyary claimed he was not at the July 2007 hearing because he was unable to travel to Minnesota. Since then, he has asserted various claims, including his wife's medical struggles, her business venture in which he was a partner, and aspects of Morocco that would dissuade her from relocating there if he were deported.

An IJ denied El Manyary's motion finding it was untimely, and he had failed to show he had diligently pursued reopening. With regard to lack of diligence, the IJ noted El Manyary's varied and conflicting explanations. Of note to the IJ was when El Manyary missed his hearing, his lawyer told the IJ that El Manyary had called, claiming to be ill. But in his motion, El Manyary explained his absence by stating that he was unable to return from Florida. The IJ noted that El Manyary could have told either USCIS or his lawyer that he was unable to return from Florida for his first hearing. Nor could El Manyary claim a lack of notice as he had communicated about the hearing with his lawyer. Because El Manyary's situation was not exceptional, the IJ did not reopen El Manyary's case *sua sponte*. El Manyary appealed and the BIA affirmed.

El Manyary did nothing for nearly five years. Eventually, he filed a second motion to reopen, arguing he lacked notice of the hearing in which he was ordered removed. If El Manyary lacked notice, the removal order could be rescinded, and, without notice, nothing triggered 8 U.S.C. § 1229b(d)(1)'s "stop-time rule." Although an alien's period of continuous presence in the United States ends when he is served a notice to appear, all the requisite information for a notice to appear

-3-

must arrive in one document. <u>Niz-Chavez v. Garland</u>, 593 U.S. 155, 158, 161 (2021) (citing 8 U.S.C. § 1229b(d)(1)). A later stop-time date would give El Manyary a better chance of proving ten years of continuous presence as required by § 1229b(b)(1)(A). In turn, ten years of continuous presence could make him eligible for cancellation of removal under § 1229b(b)(1).

The BIA denied El Manyary's second motion, finding the motion untimely and declining to toll the deadline for want of diligence. The BIA specifically rejected El Manyary's lack of notice argument, noting that even if El Manyary's initial notice to appear was defective, the record plainly established that El Manyary had received notice when USCIS rescheduled his hearing. While the BIA had the authority to exercise its discretion and reopen his case *sua sponte*, it declined to do so because he had failed to show exceptional circumstances. <u>See</u> <u>In Re J-J-</u>, 21 I. & N. Dec. 976, 984 (BIA 1997) (noting BIA precedent allowing it to reopen proceedings *sua sponte* in exceptional situations). The BIA's authority "is not meant to be used as a general cure for filing defects or to otherwise circumvent the regulations, where enforcing them might result in hardship." <u>Id.</u> El Manyary's case did not qualify, the BIA explained, because he had been subject to a final order of removal for nearly 15 years. El Manyary's remarriage and his spouse's physical and mental health conditions are neither "exceptional" nor "unusual" under the BIA's precedent. <u>See</u> <u>In Re Beckford</u>, 22 I. & N. Dec. 1216, 1219 (BIA 2000) (stating, in response to an alien's request that the BIA address an untimely motion, that the alien must show the existence of an exceptional situation).

El Manyary contends the BIA abused its discretion when it denied his motion and, alternatively, it should have reopened his proceedings *sua sponte*. We held his petition in abeyance pending two Supreme Court cases. After the court decided <u>Campos-Chaves v. Garland</u>, 602 U.S. 447 (2024), we resumed proceedings in El Manyary's case.

## II.   DISCUSSION

El Manyary challenges the BIA's denial of his motion to reopen, contending his motion was timely under 8 U.S.C. § 1229a(b)(5)(C)(ii) and the BIA should have reopened his proceedings *sua sponte*.  We review the BIA's decision for abuse of discretion.  Robles v. Garland, 23 F.4th 1061, 1063 (8th Cir. 2022).

### A.   *Timeliness*

An alien may move to reopen his proceedings and rescind a removal order issued *in absentia*.  See Gallegos v. Garland, 25 F.4th 1087, 1090 (8th Cir. 2022).  The BIA may deny such a motion if the alien fails to establish a prima facie case, fails to present previously unavailable and material evidence, or if he would not be entitled to discretionary relief even if those requirements were met.  Robles, 23 F.4th at 1064.  The BIA may also deny an untimely motion.  See Mata v. Lynch, 576 U.S. 143, 148 (2015) (observing the BIA may reject an "alien's motion to reopen because it comes too late or because it falls short in some other respect").

Some motions are not untimely even when they are filed long after an alien's ordinary deadline.  A motion based on lack of notice, for example, may be filed at any time.  8 U.S.C. § 1229a(b)(5)(C)(ii).  Notice is crucial in removal proceedings because the Immigration and Nationality Act, 66 Stat. 163, as amended, 8 U.S.C. § 1101 *et seq*., requires the government to provide written notice to aliens in removal proceedings.  8 U.S.C. §§ 1229(a)(1) – (2).  The government may provide either of two forms of notice: (a) a "notice to appear," called a "paragraph (1) notice," or (b) a "paragraph (2) notice" of hearing, providing "the new time or place of the proceedings" and the consequences "of failing, except under additional circumstances, to attend such proceedings."  Campos-Chaves, 602 U.S. at 451; 8 U.S.C. § 1229(a)(1) – (2).

El Manyary contends his motion was timely because he never received proper notice.  The record shows El Manyary received a paragraph (2) notice of hearing,

but not a paragraph (1) notice to appear. Once an alien receives a valid paragraph (2) notice, he cannot seek to rescind an *in absentia* removal order based on defective notice under § 1229a(b)(5)(C)(ii). Campos-Chaves, 602 U.S. at 450–51. El Manyary's final hearing notice ordered him to appear July 11, 2007, before an immigration court in Bloomington, Minnesota. It also warned him that failure to appear at the hearing could, barring exceptional circumstances, result in several adverse consequences. This paragraph (2) notice satisfied USCIS's notice obligation. Campos-Chaves, 602 U.S. at 457.

El Manyary asserts the hearing notice was ineffective under 8 U.S.C. § 1229(a)(2) because it was written in English rather than his native Arabic. The statute does not require notice in any language other than English. Platero-Rosales v. Garland, 55 F.4th 974, 977 (5th Cir. 2022) (citing 8 U.S.C. § 1229(a)). In addition, El Manyary had English-speaking counsel, and his counsel moved to reschedule his hearing. When that request was granted, El Manyary and his counsel received a proper paragraph (2) notice, and his counsel's receipt and understanding of the notice can be imputed to El Manyary. See Kanyi v. Gonzales, 406 F.3d 1087, 1091 (8th Cir. 2005). Evidence in the record shows the government satisfied its burden of proving El Manyary had written notice.

El Manyary also contends the BIA should have equitably tolled his deadline due to intervening changes in the law. The BIA may toll deadlines when circumstances beyond a party's control prevented timely filing. Robles, 23 F.4th at 1064. El Manyary points to two Supreme Court decisions addressing notice requirements: Pereira v. Sessions, 585 U.S. 198 (2018), and Niz-Chavez. In these cases, the Court rejected the government's attempt "to short-circuit the stop-time rule by sending notices to appear that omitted statutorily required information." Niz-Chavez, 593 U.S. at 159 (applying Pereira). The Court held the government could not trigger § 1229b(d)(1)'s stop-time rule through multiple notice documents, and that only a single, complete notice to appear could trigger the rule. Id. at 160–61.

-6-

Assuming El Manyary's deadline was eligible for tolling, see Kanyi, 406 F.3d at 1090, El Manyary's argument concerns § 1229(a)(2), which addresses subsequent hearing notices, not initial notices to appear as in Pereira and Niz-Chavez. The Supreme Court directly addressed this distinction in Campos-Chaves, holding that receipt of a proper paragraph (2) notice bars challenges based on defective notice. 602 U.S. at 457. Since El Manyary received two valid paragraph (2) notices, he cannot demonstrate lack of notice. The BIA did not abuse its discretion when it declined to reopen its removal order and declined to toll his deadline.

### B.    Sua Sponte Reopening

In the alternative, El Manyary contends the BIA should have reopened his removal proceedings *sua sponte* because he satisfied 8 U.S.C. § 1229b(b)(1), qualifying for cancellation of removal. Although the BIA may reopen removal proceedings *sua sponte*, this Court generally lacks jurisdiction to review such decisions. Salcido Mar v. Garland, 27 F.4th 598, 600 (8th Cir. 2022). We lack jurisdiction because the BIA's decision whether to reopen a proceeding is "purely discretionary." Id. In contrast, this Court has jurisdiction to review constitutional claims, questions of law, or mixed questions of law and fact. 8 U.S.C. § 1252(a)(2)(D); see also Wilkinson v. Garland, 601 U.S. 209, 212 (2024).

El Manyary asserts his case is different because it involves specific legal questions and claims the BIA did not clearly consider when it rejected his arguments, violating his Due Process rights. However, an argument that the BIA overlooked certain relevant circumstances cloaks "an abuse of discretion argument in constitutional garb." Tamenut v. Mukasey, 521 F.3d 1000, 1005 (8th Cir. 2008) (en banc) (citation omitted). These sorts of arguments may not be reviewed by us. Id.

Finally, El Manyary contends the existence of exceptional circumstances was a mixed question of law and fact. Here, any exceptional circumstances were not mixed questions. The BIA "judicially created the 'exceptional situation' prerequisite to its discretionary authority to *sua sponte* reopen removal orders." See

Cuevas-Nuno v. Barr, 969 F.3d 331, 335 (6th Cir. 2020); see also In Re J-J-, 21 I. & N. Dec. at 984 (citing 8 C.F.R. § 3.2(a) and creating the BIA's standard).  When the BIA decides whether its precedent makes a case exceptional and appropriate for *sua sponte* reopening, its decision is purely discretionary.  See Salcido Mar, 27 F.4th at 600 (observing that most exercises of the BIA's *sua sponte* reopening authority are discretionary).  Since the BIA denied reopening without relying upon § 1229a(b)(5)(C)(i) or § 1229b(b)(1), we lack jurisdiction to review its decision.

## III.   CONCLUSION

For the foregoing reasons, we deny the petition for review.

_____