RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0261p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

MIRIAM PATRICIA VARGAS-RODRIGUEZ,

*Petitioner*,

*v.*

PAMELA BONDI, Attorney General,

*Respondent*.

┐
│
│
> No. 24-3927
│
│
┘

─────────────────

On Petition for Review from the Board of Immigration Appeals.
No. A 098 895 558.

Decided and Filed: September 19, 2025

Before: CLAY, GILMAN, and BLOOMEKATZ, Circuit Judges.

─────────────────

**COUNSEL**

**ON BRIEF:** Nicholas N. Pasquarello, NP IMMIGRATION, LLC, Columbus, Ohio, for Petitioner. Sarah A. Byrd, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

GILMAN, J., delivered the opinion of the court in which CLAY and BLOOMEKATZ, JJ., concurred. BLOOMEKATZ, J. (pp. 11–16), delivered a separate concurring opinion.

─────────────────

**OPINION**

─────────────────

RONALD LEE GILMAN, Circuit Judge. An immigration judge (IJ) issued a removal order for Miriam Patricia Vargas-Rodriguez in 2009. In 2024, Vargas-Rodriguez filed her third motion to reopen. The Board of Immigration Appeals (BIA) denied the motion. For the reasons set forth below, we **DENY** Vargas-Rodriguez's petition for review.

## I.  BACKGROUND

Vargas-Rodriguez, a native and citizen of Honduras, entered the United States without inspection in 2005. Soon after her entry, immigration officials from the Department of Homeland Security (DHS) served her with a Notice to Appear (NTA) before an IJ in removal proceedings.  In the NTA, DHS charged Vargas-Rodriguez with removability under 8 U.S.C. § 1182(a)(6)(A)(i).

The NTA listed the date, time, and location for Vargas-Rodriguez's first hearing in removal proceedings as February 9, 2006, at 9:00 a.m. at the Arlington Immigration Court in Arlington, Virginia.  It also listed Vargas-Rodriguez's current address as an address in Columbus, Ohio, and advised her that she must "notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding."  Finally, the NTA cautioned Vargas-Rodriguez that DHS would mail notices of future hearings to her listed address, and that if she did not provide an updated address as necessary, "then the Government shall not be required to provide you with written notice of your hearing."  DHS also verbally communicated to Vargas-Rodriguez, in Spanish, the time and place of the hearing, the consequences of failing to appear, and her obligation to provide an updated address.

Vargas-Rodriguez did not appear at the scheduled February 9, 2006 hearing at the Arlington Immigration Court. But because DHS had failed to file the NTA with the court by that date, the IJ dismissed her case for failure to prosecute.  DHS subsequently filed the NTA with the Arlington Immigration Court on March 9, 2006, along with a motion to recalendar the proceedings.  It certified that it had mailed a copy of each to Vargas-Rodriguez.  The IJ granted the motion and scheduled a hearing for April 23, 2009.  Notice of the rescheduled hearing was mailed to Vargas-Rodriguez at the Columbus, Ohio address listed on the NTA.

In April 2009, the IJ issued an order that changed the venue of the hearing to the Cleveland Immigration Court to accommodate Vargas-Rodriguez's Ohio address.  The IJ in Cleveland scheduled a hearing for August 6, 2009 and sent notice to Vargas-Rodriguez.  But the U.S. Postal Service was unable to deliver the notice to Vargas-Rodriguez at the address on file.

The IJ then rescheduled the hearing for November 25, 2009, and again unsuccessfully attempted to send notice to Vargas-Rodriguez's Ohio address.

Vargas-Rodriguez did not appear for the November 25, 2009 hearing. Pursuant to 8 U.S.C. §1229a(b)(5)(A), the IJ conducted the hearing *in absentia*. He determined that DHS had met its burden to present evidence that established the truth of the allegations in the NTA, and that, by failing to appear, Vargas-Rodriguez had abandoned any application for relief. The IJ therefore ordered Vargas-Rodriguez's removal to Honduras.

Vargas-Rodriguez filed her first motion to reopen her proceedings and rescind the removal order in 2013. Among other things, she argued that she had not received a notice of her November 25, 2009 hearing. She submitted an affidavit asserting that she had lost the papers that she received from DHS and that she had not been told of her obligation to update her address. Because DHS had released her, she believed that she was permitted to remain in the United States and was not "obligated to do anything." She denied receiving any notices in the mail and claimed that she was unaware of the removal order until immigration officials appeared at her home in 2013.

The IJ rejected Vargas-Rodriguez's lack-of-notice argument. He found that she had received the NTA that informed her of the hearing and her obligation to update her address, and that this was sufficient to provide Vargas-Rodriguez with constructive notice of the new time and date for her hearing. Vargas-Rodriguez appealed to the BIA, which affirmed the IJ's ruling.

In 2018, Vargas-Rodriguez filed her second motion to reopen, again arguing, among other things, that she had not received a notice of her hearing. The BIA denied the motion, observing that "a motion to reopen is not an opportunity to repeat previously considered and rejected arguments, or a mechanism to raise arguments that could have been previously advanced."

Vargas-Rodriguez filed her third motion to reopen—the present motion—in 2024. She again argued that the BIA should reopen her proceedings due to a lack of notice. Although she acknowledged that she was making this argument for the third time, she asserted that new legal developments—specifically the Supreme Court's decisions in *Pereira v. Sessions*, 585 U.S. 198

(2018), and *Niz-Chavez v. Garland*, 593 U.S. 155 (2021)—warranted reopening of her case. She also urged the BIA to exercise its sua sponte authority to reopen her proceedings. Finally, she raised a new argument that the immigration court lacked jurisdiction over her proceedings because of DHS's failure to timely file the NTA back in 2006.

The BIA held that Vargas-Rodriguez's third motion to reopen was both untimely and numerically barred. It also declined to exercise its sua sponte authority to reopen her proceedings, specifically stating that it was "unpersuaded" by her arguments regarding the Supreme Court's decision in *Niz-Chavez*. Vargas-Rodriguez timely petitioned this court for review.

## II. DISCUSSION

### A. Standard of review

We review the BIA's denial of a motion to reopen under the abuse-of-discretion standard. *Lopez v. Garland*, 990 F.3d 1000, 1002 (6th Cir. 2021). "The BIA abuses its discretion only when its determination was made 'without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Id.* (quoting *Thompson v. Lynch*, 788 F.3d 638, 642 (6th Cir. 2015)). We review the BIA's legal conclusions de novo. *Turcios-Flores v. Garland*, 67 F.4th 347, 354 (6th Cir. 2023).

### B. Legal framework for petitions to reopen

Under 8 U.S.C. § 1229a(c)(7)(A), a petitioner is generally permitted to file only one motion to reopen her proceedings. 8 U.S.C. § 1229a(c)(7)(A); *see also* 8 C.F.R. § 1003.2(c)(3)(i)–(iv) (delineating the exceptions to the numerical bar). The petitioner must typically file this motion within 90 days after the entry of the final order of removal. 8 U.S.C. § 1229a(c)(7)(C)(i). This time limitation, however, does not apply to a motion to reopen a proceeding that resulted in an *in absentia* decision if the motion is based on a lack of notice. *See id.* § 1229a(b)(5)(C)(ii) (stating that, in such case, a petitioner may move to reopen "at any time").

Notwithstanding these limitations, 8 C.F.R. § 1003.2(a) gives the BIA wide discretion to reopen a petitioner's proceedings sua sponte.  We generally "lack jurisdiction to review a BIA decision declining to exercise its discretionary authority to sua sponte reopen a removal order." *Lopez*, 990 F.3d at 1003 (quoting *Cuevas-Nuno v. Barr*, 969 F.3d 331, 335 (6th Cir. 2020)); *see also* 8 C.F.R. § 1003.2(a) ("The Board has discretion to deny a motion to reopen even if the moving party has made out a prima facie case for relief.").

Here, Vargas-Rodriguez acknowledges that she has filed three motions to reopen, all of them past the 90-day time limit.  But she argues that the BIA abused its discretion by concluding that her latest motion was time- and number-barred because those bars "do not apply when the alien asserts she failed to receive proper notice of the in absentia hearing."  She contends that the BIA was required to address her arguments in light of the Supreme Court's decisions in *Pereira* and *Niz-Chavez*.  Vargas-Rodriguez also asserts that the BIA provided insufficient reasoning for its decision not to reopen her proceedings sua sponte, and that we should review that decision because it was premised on legal error.  Finally, she argues that the BIA erred in failing to consider her new argument regarding jurisdiction.

Vargas-Rodriguez's third motion to reopen raises an open question for this court.  This court has not yet ruled in a published decision on whether a petitioner may file multiple motions to reopen based on a lack of notice.  *See Patel v. Sessions*, 742 F. App'x 89, 92 (6th Cir. 2018) ("[I]f the Patels were in fact impermissibly denied notice, then the Patels were not subject to the time and number limits on motions to reopen.").  Our sibling circuits differ on this issue. *Compare Nacorra v. INS*, 52 F. App'x 896, 897 (9th Cir. 2002) (holding that "a motion to reopen for lack of notice may be filed at any time and there is no numerical limitation on such motions" that present new facts or legal theories), *with Luntungan v. AG of the United States*, 449 F.3d 551, 552 (3d Cir. 2006) ("[U]nder the plain language of both the Immigration and Nationality Act and a BIA regulation, an alien ordered removed in absentia may file only one motion to reopen."), *and Guang Lin Chang v. United States AG*, 643 F. App'x 864, 867 (11th Cir. 2016) ("A petitioner may, however, file only one motion alleging lack of notice. The language of this regulation is plain." (citations and internal quotation marks omitted)).

But we have no need to answer this question in the present case. Even if Vargas-Rodriguez is correct that she is permitted to file multiple motions to reopen based on a lack of notice, any error by the BIA in failing to consider those arguments here would be harmless because her new arguments regarding notice are entirely without merit. *See Gurung v. Barr*, 929 F.3d 56, 61 (2d Cir. 2019) (holding that the court need not remand to the BIA where remand would be futile). We will therefore address the notice issue on the merits, followed by Vargas-Rodriguez's arguments regarding jurisdiction and sua sponte reopening.

## C. Notice

Vargas-Rodriguez claims that under the Supreme Court's decisions in *Pereira* and *Niz-Chavez*, the NTA that she received was insufficient to provide her with notice. But those cases do not concern notice, as she acknowledges. They instead establish that an NTA that does not contain the time and place of a hearing is insufficient under 8 U.S.C. § 1229(a) to trigger the stop-time rule for purposes of cancellation-of-removal eligibility. *Pereira*, 585 U.S. at 208–09; *Niz-Chavez*, 593 U.S. at 160–61. Although we have not yet held as much, Vargas-Rodriguez argues that an NTA that is deficient under *Pereira* and *Niz-Chavez* is also per se deficient for the purposes of notice.

We have no need to address the applicability of *Pereira* and *Niz-Chavez* to "notice arguments" because the NTA that Vargas-Rodriguez received was not defective under either Supreme Court decision. As the Court explained in *Niz-Chavez*, an NTA that does not specify a time and place is defective because "Congress took pains to describe exactly what the government had to include in a notice to appear, and that the time and place of the hearing were among them." *Niz-Chavez*, 593 U.S. at 159 (citing *Pereira*, 585 U.S. at 208–09, 217). Vargas-Rodriguez's NTA met those statutory requirements by specifying that her hearing would be held on February 9, 2006, at 9:00 a.m. at the Arlington Immigration Court. The fact that the government later provided notice that the time and date of her hearing had changed does not render the NTA defective. As *Pereira* and *Niz-Chavez* recognized, the government routinely updates the times and places that are provided in NTAs, and sends notice to petitioners accordingly. *Id.* at 170; *Pereira*, 585 U.S. at 217–18.

But Vargas-Rodriguez points out that her hearing was not merely postponed or moved, but instead dismissed for failure to prosecute and then recalendared. She argues that because DHS mailed its motion to recalendar to Vargas-Rodriguez's Ohio address, specifying that her case was "closed," she could have "reasonably believed she did not have a case before the Court" and had no obligation to update her address. As an initial matter, the motion to recalendar also stated that DHS was asking the court to reopen the case and schedule a hearing. We are not persuaded that this document could have reasonably led Vargas-Rodriguez to believe that her obligation to update her address had been extinguished. The notice specifying April 23, 2009 as the date for the recalendared hearing was also successfully delivered to that same address.

In any event, Vargas-Rodriguez previously swore in an affidavit that she had not received *any* notices, including the allegedly confusing motion to recalendar. She represented that her failure to appear was instead due to her assumption that because DHS had released her, she was permitted to remain in the United States and was not "obligated to do anything." Ultimately, when a petitioner seeks to rescind an *in absentia* removal order based on a lack of notice, "relief is conditioned upon the [petitioner's] showing he was not at fault for failing to appear," *Campos-Chaves v. Garland*, 602 U.S. 447, 461 (2024). Vargas-Rodriguez has not met that burden here.

For the same reasons, Vargas-Rodriguez's heavy reliance on the unpublished, out-of-circuit decision in *Shogunle v. Holder*, 336 F. App'x 322 (4th Cir. 2009), is unwarranted. In *Shogunle*, the petitioner appeared at his hearing as directed, only to discover that DHS had failed to file the NTA with the immigration court. He was informed that he would receive information about a future hearing at a later date. A month later, he moved. He notified DHS of his new address and set up mail forwarding with the U.S. Postal Service. But when a new hearing was scheduled, DHS failed to ensure that notice was sent to Shogunle's updated address, and the U.S. Postal Service failed to forward the notice. Shogunle therefore never received a notice of his new hearing, and when he did not appear, the immigration court ordered his removal *in absentia*.

The Fourth Circuit held that Shogunle was entitled to the reopening of his proceedings based on a lack of notice. It concluded that he had discharged his obligations by appearing at his initial hearing and informing DHS that his address had changed. The court reasoned that when

DHS failed to timely file the NTA, "the logical entity with which to lodge a change of address would be DHS, since it controlled whether the action would even proceed any further," and that it was not Shogunle's burden "to keep in constant contact with the court to determine when, if ever, the court would have jurisdiction." *Shogunle*, 336 F. App'x at 325.

Like Shogunle, Vargas-Rodriguez was sent a notice of a new hearing after DHS failed to timely file the NTA with the immigration court. She also, like Shogunle, claims that she did not receive that notice. But unlike Shogunle, Vargas-Rodriguez did not appear at the time and date listed on her NTA, nor did she notify DHS of her change of address. Her failure to appear at her November 25, 2009 hearing was thus not a result of DHS's failures, but of her erroneous belief that she was not required to update her address or appear at a hearing. Although the dismissal and reinstatement of proceedings might unfairly deprive a petitioner of notice, as in *Shogunle*, the record in the present case is easily distinguishable from that in *Shogunle*.

**D.      Jurisdiction**

Vargas-Rodriguez next argues that the immigration court lacked jurisdiction over her case. She points to 8 C.F.R. § 1003.14(a), which states that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the [DHS]." 8 C.F.R. § 1003.14(a). According to Vargas-Rodriguez, "DHS's failure to commence her proceedings on or before February 9, 2006 stripped the August 9, 2005 NTA of its ability and DHS of its authority to initiate her proceedings." In order to reinstitute the immigration court's jurisdiction, she contends that DHS would have needed to serve her with a new NTA bearing an updated date and time for her hearing and file that NTA with the court.

Vargas-Rodriguez again relies heavily on *Shogunle* to support her argument. In that case, the Fourth Circuit reasoned that when Shogunle appeared for his cancelled hearing, "the [immigration] court did not have jurisdiction [under 8 C.F.R. § 1003.14(a)] as of that date" because DHS had not yet filed the NTA. *Shogunle*, 336 F. App'x at 324.

As an initial matter, the Fourth Circuit itself has disclaimed reliance on *Shogunle* for this premise. It reasoned that 8 C.F.R. § 1003.14(a) is a claims-processing rule rather than a

jurisdictional regulation, and that the regulation uses the word "jurisdiction" in a colloquial rather than a technical sense. *See United States v. Cortez*, 930 F.3d 350, 361 (4th Cir. 2019) (holding that 8 C.F.R. § 1003.14(a) is "focused not on the immigration court's fundamental power to act but rather on requiring that the parties take certain procedural steps at certain specified times, making it a claim-processing rule rather than a genuine jurisdictional requirement" (citation and internal quotation marks omitted)). But even if 8 C.F.R. § 1003.14(a) is indeed a true jurisdictional rule—and we note that previous opinions by this court appear to have taken this for granted, *see Hernandez-Perez v. Whitaker*, 911 F.3d 305, 310 (6th Cir. 2018)—the immigration court had jurisdiction over Vargas-Rodriguez's case.

The regulation specifies that jurisdiction vests when DHS files a "charging document" with the immigration court. 8 C.F.R. § 1003.14(a). Here, DHS filed the NTA, which is a charging document. *See* 8 C.F.R. § 1003.13. This court has held that even an NTA that is defective under *Pereira* is sufficient to vest jurisdiction in the immigration court under 8 C.F.R. § 1003.14(a). *See Singh v. Garland*, No. 21-3812, 2022 WL 4283249, at *7 (6th Cir. Sept. 16, 2022) ("[C]ircuit courts (including our own) have uniformly rejected these post-*Pereira* 'jurisdictional' arguments, which effectively equated an administrative agency with an Article III court."); *Ramos Rafael v. Garland*, 15 F.4th 797, 801 (6th Cir. 2021) ("For jurisdictional purposes, it is not necessary that the Notice to Appear contain all the required information or that all the information be included in a single document."). Bound by this holding, we conclude that Vargas-Rodriguez's NTA—which was not defective but merely had outdated information by the time that DHS filed it—was sufficient to vest jurisdiction in the immigration court.

## E.     Sua sponte reopening

Finally, Vargas-Rodriguez argues that the BIA erred by declining to reopen her proceedings sua sponte. We acknowledge that several unpublished opinions by this court opine that our jurisdiction to review such decisions is unclear. *See, e.g.*, *Hermiz v. Garland*, 848 F. App'x 184, 187 (6th Cir. 2021). A published opinion from this court, however, makes reasonably clear that we are foreclosed from reviewing the BIA's ultimate decision not to exercise its sua sponte authority. *See Rais v. Holder*, 768 F.3d 453, 460 (6th Cir. 2014) (holding that "the exercise of this specific authority 'is committed to the unfettered discretion of the BIA

and therefore is not subject to judicial review'" (quoting *Barry v. Mukasey*, 524 F.3d 721, 723 (6th Cir. 2008) (other internal quotation marks omitted)).

Whether *Rais* forecloses our jurisdiction to review the legal standards underlying such decisions is less clear, however, as discussed in detail by our colleague in her concurring opinion. But to the extent that Vargas-Rodriguez argues that the BIA applied the incorrect legal standards in deciding not to reopen the present case, her contentions are the same notice and jurisdictional arguments that we already rejected above.

## III.  CONCLUSION

For all of the reasons set forth above, we **DENY** the petition for review.

———————————

**CONCURRENCE**

———————————

BLOOMEKATZ, Circuit Judge, concurring. I join the majority opinion in full. I write separately to address confusion in our precedents about our jurisdiction to review decisions of the Board of Immigration Appeals (BIA) not to reopen immigration proceedings *sua sponte*. This confusion may stem from the distinction between the BIA's ultimate exercise of discretion, which we do not have jurisdiction to review, and the BIA's legal analysis, which we might have jurisdiction to review for legal errors.

*Confusion in our precedents.* In her petition, Vargas Rodriguez makes two separate arguments as to why the BIA should have reopened her case. *First*, she argues that she is entitled to reopen her proceedings under 8 U.S.C. § 1229a(c)(7); I call this "statutory reopening." Under § 1229a(c)(7), individuals who have been ordered to leave the country have a statutory right to file a motion to reopen their removal proceedings. *Mata v. Lynch*, 576 U.S. 143, 144 (2015). The point of a motion to reopen essentially is to "ask[] the Board to change its decision in light of newly discovered evidence or a change in circumstances." *Dada v. Mukasey*, 554 U.S. 1, 12 (2008) (citation omitted). Section 1229a provides a set of standards for statutory motions to reopen, including how many may be filed, what they must include in terms of its content, and when the deadline for filing them is. 8 U.S.C. § 1229a(c)(7), (b)(5)(C). There is no question that we have jurisdiction to review the BIA's decision to deny statutory reopening, as we have done in this case. Maj. Op. at 4–8; *Mata*, 576 U.S. at 147–48.

*Second*, Vargas Rodriguez argues that even if she is not entitled to statutory reopening, the BIA should have reopened her case on its own anyway; I call this "*sua sponte* reopening." The BIA's authority to reopen *sua sponte* derives from the Attorney General's general statutory authority to carry out immigration laws. 8 U.S.C. § 1103; 23 Fed. Reg. 9115, 9117 (Nov. 26, 1958). But unlike statutory reopening, no statute or regulation provides any standard for the BIA's exercise of its *sua sponte* reopening authority. *See* 8 U.S.C. § 1103(g)(2); 8 C.F.R.

§ 1003.2(a). And, unlike statutory reopening, our jurisdiction (or lack thereof) to review the BIA's denials of *sua sponte* reopening is confusing.

There is tension in our caselaw regarding our jurisdiction to review petitions challenging the BIA's decision not to reopen immigration proceedings *sua sponte*. As the majority opinion mentions, multiple unpublished decisions of our court have opined that "our jurisdiction to review such decisions is unclear." Maj. Op. at 9. *See, e.g.*, *Patel v. Bondi*, No. 24-3624, 2025 WL 1013473, at *2 (6th Cir. Mar. 31, 2025); *Singh v. Garland*, No. 21-3812, 2022 WL 4283249, at *9 (6th Cir. Sept. 16, 2022); *Hermiz v. Garland*, 848 F. App'x 184, 187 (6th Cir. 2021). *But see Ramirez-Lopez v. Garland*, No. 21-3794, 2022 WL 2161087, at *2 n.2 (6th Cir. June 15, 2022) (deeming the question settled); *Sow Bolo v. Barr*, 828 F. App'x 295, 297–98 (6th Cir. 2020) (same). That uncertainty appears to conflict with the "reasonably clear" decision in an earlier published case—*Rais v. Holder*—which seemingly placed review of the BIA's decision not to *sua sponte* reopen proceedings beyond our jurisdiction. Maj. Op. at 9; *see* 768 F.3d 453, 463–64 (6th Cir. 2014). Our unpublished cases cite *Rais*, so the confusion does not stem from an inadvertent failure to apply binding precedent. *E.g.*, *Patel*, 2025 WL 1013473, at *2; *Singh*, 2022 WL 4283249, at *9. Yet, they still assert that the scope of our jurisdiction over *sua sponte* reopening is unsettled.

While confusing, our caselaw may not be inconsistent. I explore one possible way to understand our cases that explains this apparent inconsistency between *Rais* and the repeated view that this area of the law is uncertain.

*Lack of jurisdiction over* sua sponte *reopening.* To understand the confusion, it helps to look back to our earlier precedents on this issue that explained why we lack jurisdiction to review the BIA's ultimate decision not to reopen a case *sua sponte*. In *Harchenko v. I.N.S.*, we held that we lack jurisdiction to review the BIA's denial of *sua sponte* reopening. 379 F.3d 405, 410–11 (6th Cir. 2004). We reasoned that the regulation establishing the BIA's *sua sponte* authority commits the exercise of that authority to the BIA's "unfettered discretion." *Id.* at 410. And without a "meaningful standard against which to judge the agency's exercise of discretion," we concluded that we lack jurisdiction to review the BIA's denials of *sua sponte* reopening. *Id.* at 411 (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). We later reaffirmed that holding

in *Barry v. Mukasey*. 524 F.3d 721, 723–24 (6th Cir. 2008). At the time, our approach aligned with most other circuits. *See Tamenut v. Mukasey*, 521 F.3d 1000, 1004 (8th Cir. 2008) (per curiam) (collecting cases).[1]

A few years later, the Supreme Court entered the fray with *Kucana v. Holder*, albeit in the context of statutory (not *sua sponte*) reopening. 558 U.S. 233 (2010). In *Kucana*, the Court asked whether federal courts have jurisdiction to review the BIA's denial of a statutory motion for reopening. *Id.* at 236–37. As the Court explained, the Immigration and Nationality Act (INA) precludes judicial review of immigration decisions that are committed to the Attorney General's discretion. 8 U.S.C. § 1252(a)(2)(B)(ii). The INA does not make statutory reopening discretionary, however; instead, the BIA declared it discretionary through its own regulation. *Id.* at 239. The Court, then, had to determine whether that regulation could bar judicial review of statutory reopening decisions. *Kucana* held that the INA's jurisdictional bar applies only to BIA decisions that are deemed discretionary by statute. *Id.* at 237. The BIA thus could not unilaterally shelter its decision from judicial review by declaring it discretionary through regulation. *Id.* at 252. Because no statute made statutory reopening discretionary, the Court held that federal courts retain jurisdiction to review statutory motions to reopen. *Id.* at 253.

What impact did *Kucana* have on *sua sponte* reopening, the type at issue in Vargas Rodriguez's case? In *Kucana,* the Court expressly declined to address whether federal courts can also review the BIA's decision "not to reopen removal proceedings *sua sponte*." *Id.* at 251 n.18. And it did so while recognizing that, at the time, many circuits considered *sua sponte* determinations unreviewable. *Id.* So, a few months later, we faced the question of whether *Kucana* abrogated *Harchenko* and *Barry* and changed our jurisdiction over *sua sponte* reopening. We said it did not. *Gor v. Holder*, 607 F.3d 180, 186–87, 193 (6th Cir. 2010). In *Gor*, we noted that *Kucana* "casts considerable doubt" on those cases, because as in *Kucana*, the BIA's *sua*

---

[1]The limit on our jurisdiction in this context does not rest on the fact that the BIA's *sua sponte* authority is established by regulation rather than a specific statutory provision. 8 C.F.R. § 1003.2(a). Statutory reopening too was for a long time a creature of regulation alone. *Kucana v. Holder*, 558 U.S. 233, 249 (2010). In 1996, Congress codified the regulation to create what we now call statutory reopening. *Id.* But courts had no problem reviewing denials of motions to reopen even before they were put into statute. *Id.* at 242 (collecting cases). Thus, what limited our jurisdiction over the BIA's ultimate decision whether to *sua sponte* reopen a case was not that the BIA's authority derived from regulation, but that no statute or regulation provided any standard for it.

*sponte* authority is made discretionary not by statute but by the BIA's own regulations. *Id.* at 182, 189–91. Still, we did not read *Kucana* to directly overrule our precedents because *Kucana* expressly declined to opine on *sua sponte* reopening. *Id.* at 188. We therefore concluded that *Harchenko* and *Barry* remained our circuit's law, but we urged the en banc court to reexamine their validity. *Id.* at 182. The en banc court declined to do so.

*Constitutional questions and issues of law.* In examining our jurisdiction, none of the cases discussed thus far considered whether we had jurisdiction to review the BIA's underlying reasons for denying *sua sponte* reopening. Immigration law often makes a distinction between the BIA's ultimate decision to deny discretionary relief and the BIA's reasoning underlying that decision. *See, e.g.*, *Wilkinson v. Garland*, 601 U.S. 209, 218–19 (2024). For the latter, courts often have jurisdiction to review constitutional claims and questions of law and correct any legal errors that may have motivated the BIA's decision. *Id.* In that way, courts allow the BIA to exercise its discretion free of legal misconceptions.

Other circuits rely on this distinction in the context of *sua sponte* reopening. Today, all circuits that review immigration appeals still consider the BIA's ultimate decision on *sua sponte* reopening unreviewable. But nine circuits nonetheless retain limited jurisdiction to review the BIA's underlying reasoning for legal or constitutional error. *See Thompson v. Barr*, 959 F.3d 476, 483 (1st Cir. 2020); *Mahmood v. Holder*, 570 F.3d 466, 469 (2d Cir. 2009); *Pllumi v. Att'y Gen. of U.S.*, 642 F.3d 155, 160 (3d Cir. 2011); *Rodriguez-Saragosa v. Sessions*, 904 F.3d 349, 355 (5th Cir. 2018); *Fuller v. Whitaker*, 914 F.3d 514, 519 (7th Cir. 2019); *Manyary v. Bondi*, 129 F.4th 473, 479 (8th Cir. 2025); *Bonilla v. Lynch*, 840 F.3d 575, 588 (9th Cir. 2016); *Reyes-Vargas v. Barr*, 958 F.3d 1295, 1300 (10th Cir. 2020); *Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 871 (11th Cir. 2018), *overruled in part on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411, 419–23 & n.2 (2023). The one remaining sister circuit which reviews immigration appeals has left the question open. *Williams v. Garland*, 59 F.4th 620, 643 n.10 (4th Cir. 2023).

We have not yet had the opportunity to fully address this approach. The closest precedent we have is *Rais*. There, we acknowledged that, "[g]enerously construed," the petitioner argued that the court could review the BIA's denial of *sua sponte* reopening for

"'constitutional claims' and 'questions of law.'" *Rais*, 768 F.3d at 462. But he did so only in a single "unsubstantiated phrase," so we deemed the issue "waived." *Id.* at 462–63. Furthermore, after reviewing the petitioner's argument, we determined that "the claim does not raise a question of law." *Id.* at 463 & n.19. Accordingly, I question whether the jurisdictional issue was fairly presented in *Rais*.

Regardless, after finding waiver and concluding that there was no legal error asserted, we stated in *Rais* that, "[i]n any event," the panel lacked jurisdiction over the petition "even if it alleges constitutional claims or questions of law." *Id.* at 462–63. As the majority opinion acknowledges, that sounds "reasonably clear." Maj. Op. at 9. But, in *Rais*, any legal challenge was directed at the lawfulness of the BIA's ultimate decision, not the legal reasoning underlying it. Specifically, the petitioner argued that the BIA's ultimate decision frustrated his pending application before USCIS for an adjustment of status. 768 F.3d at 458. His requested relief further reflected his challenge to the BIA's ultimate exercise of discretion: he asked us to "reverse" the BIA and "reopen his removal proceedings." Petitioner Br., No. 13-3639, at 25. He did not ask us to remand so the BIA "may exercise its authority against the correct legal background"—the appropriate remedy when "an incorrect legal premise" underlies the BIA's decision and jurisdiction exists to correct it. *Bonilla*, 840 F.3d at 588 (cleaned up).

*Rais*'s reasoning also demonstrates that it was addressing a challenge to the BIA's final decision. As *Rais* explained, the BIA's final decision is "not reviewable because there [is] simply no law to apply." 768 F.3d at 463 (citation and internal quotation marks omitted); *see also Harchenko*, 379 F.3d at 411. But that rationale does not extend to petitions that challenge a legal premise in the BIA's reasoning. In those circumstances, there may well be law to apply. This case is one example. Whether Vargas Rodriguez received adequate notice of her removal proceedings depends on whether the notices complied with specific statutory requirements. *See Campos-Chaves v. Garland*, 602 U.S. 447, 461–65 (2024) (resolving this question through statutory interpretation). That determination is governed by "clear [statutory] guidelines," not the agency's absolute discretion. *Heckler*, 470 U.S. at 831, 834–35 (noting there is "law to apply" where a statute provides "meaningful standards").

Even looking beyond *Rais*, none of our other precedential decisions in this area clearly involved a challenge to a legal premise underlying the BIA's denial of *sua sponte* reopening. Instead, they all seem to address challenges to the BIA's ultimate denial of *sua sponte* reopening. *See Harchenko*, 379 F.3d at 409 (petitioner claimed that "the BIA abused its discretion in denying his motion to reopen"); *Barry*, 524 F.3d at 723 (petitioner claimed that "the BIA abused its discretion when it . . . failed to . . . reopen proceedings"); *Gor*, 607 F.3d at 183, 191–93 (petitioner challenged not the BIA's legal conclusions, but how much weight it gave to the petitioner's legal arguments).

With no on-point precedent, it is less surprising that, despite *Rais*, many of our unpublished opinions have called our jurisdiction in this area "debatable." *Singh*, 2022 WL 4283249, at *9. We have not clearly foreclosed the approach adopted by nine of our sister circuits. And we do not do so today. As explained by the majority opinion, we need not wade into the complexities of this jurisdictional debate because we had jurisdiction to review Vargas Rodriguez's legal claim. She raised the same claim as to the denial of *sua sponte* reopening as she did for the denial of statutory reopening—which all agree we have jurisdiction to review. Exercising that jurisdiction, we rejected her claim. And we need not resolve it twice. We leave the scope of our jurisdiction in this area for our court to address when squarely presented.